## ANNIE J. HEWEY

*vs.*

## METROPOLITAN LIFE INSURANCE COMPANY.

### Androscoggin.    Opinion December 6, 1905.

*Policy of Life Insurance.    Application Therefor signed in Blank.    Agent Filled in Blank Spaces.    When Applicant is Bound by the Statements Therein.    When not Bound.    Such Application Construed more Favorably to Applicant. Mistakes and Misrepresentations.    Evidence.*

An application for a policy of life insurance was signed in blank by the applicant and delivered in this condition to the agent of the defendant company with the understanding that the agent should fill in the answers to the questions from information contained in a previous application for insurance which had been made out in the applicant's presence and signed by him.   The second application as filled out by the agent was forwarded to the company and the policy in suit was issued thereon and afterwards delivered to the applicant now deceased and was accepted by him.

*Held:* that if the agent of the company filled in the second application in accordance with the terms of the first one, then the applicant would be bound by it; but if the agent filled in the second application with answers that were not contained in the first one or put them in differently from what they were in the first, then the applicant would not be bound by them, because they would be the answers of the agent and not the answers of the applicant.

It is a sound rule of law that an application for life insurance signed in blank by one desiring insurance and filled in by the company or its agents should be construed more favorably to the applicant.

Upon an analysis of the two applications, the most that can be said with respect to their identity is that if the applicant had read or been personally interrogated with respect to the questions and answers in the second application he might have answered the same as he did in the first, and he might have answered in an entirely different way.   The answers in the second application cannot therefore be said to be such necessary inferences from those contained in the first as to be regarded as a statement of the applicant and therefore binding upon him.

In order to defeat the claim of a person insured, who has paid the consideration required for the insurance received, upon the ground that the insured made misrepresentations as to the risk in his application, it is incumbent upon the company to show that the misrepresentations were his and not mistakes or misrepresentations of its own.

When an insurance company or its agents·undertake to fill in an application
from a previous application or statement made by the applicant, it should
be held to the strictest adherence to the terms of such application or
statement made, otherwise it would be in the power of the company or its
agents in such a case to fraudulently destroy the legal status of the policy
so obtained.

On exceptions by defendant.    Overruled.

Assumpsit on a policy of life insurance for $500 issued by defendant on the life of Robert Hewey, now deceased, brought by the plaintiff, the wife of said deceased and the beneficiary named in said policy. Tried at the January term, 1905, Supreme Judicial Court, Androscoggin County.    Verdict for plaintiff.    Defendant filed a motion for a new trial which was afterwards abandoned.    Defendant also excepted to certain rulings made by the presiding Justice during the trial.

The case appears in the opinion.

Memorandum.    This case was argued at the June term, 1905, of the Law Court at Portland.    One of the Justices sitting at said term, did not sit in this case being disqualified under the statute by reason of having ruled in said case at nisi prius.

*Harry Manser*, for plaintiff.

*White & Carter*, for defendant.


SITTING:    EMERY, STROUT, PEABODY, SPEAR, JJ.


SPEAR, J.    This is an action on the case upon a policy of life insurance.    .The deceased made an application for a policy for $1000 in the defendant company which was dated October 18, 1902, followed by a medical examination the same day.    This application was filled out by an agent of the company in the presence of the deceased from information furnished by him and was then signed by him and witnessed by the agent.    The company declined to write a policy on the class applied for but intimated that it would write one of a different class to the amount of $500.    Upon this information Robert Hewey, the deceased, signed a new application on the 8th day of November, 1902, in which the answers to the questions had not been filled in, and delivered it in this condition to the agent of the defendant company with the understanding that the agent should

fill in the answers to the questions from the information contained in the first application which had been made out in Hewey's presence and signed by him. There was no new medical examination at the time the second application was made. The second application as filled out by the agent was forwarded to the company and the policy in suit was issued thereon and afterwards delivered to Robert Hewey, the deceased, and was accepted by him. Upon this branch of the case, the court instructed the jury as follows: "So that in this case any answer in this second application, assuming that Mrs. Hewey's statement is true, that they left it as she says and that the agents were to fill in the blanks from the old application or from the knowledge which they got in the old application, so far as they filled in those blanks in accordance with the old application, they would then be filling in the blanks for him and the answers made would be his answers, because that was what he agreed to. But so far as they filled in the application with answers that he had not made in the old application—put in things that were not referred to in the old application—put them in differently from what they were in the old application—then he would not be bound by them because they would be the answers of the agents and not the answers of Mr. Hewey." This is undoubtedly the correct statement of the law governing this case and as we understand, is so conceded by the defendants. The two applications upon which the above instruction was based contained among other questions and answers the following which are material in this case.

"6. A. Name and residence of your usual medical attendant. Dr. H. H. Cleveland. 6. B. When and for what have his services been required? 9 mos. ago. "Cold." "7. Have you consulted any other physician? If so, when and for what? No, exc. as in No. 3." No. 3 referred to is as follows: "3. Give full particulars of any illness you may have had since childhood and name of medical attendant or attendants. Grippe 4 yrs. ago. Dr. J. A. Leader." The second application contained the following: "5. The following is the name of the physician who last attended me, the date of the attendance, and name of the complaint for which he attended me. Dr. Cleveland. Feb. 1902. Grippe." "6. I have not been under

the care of any physician within two years, unless as stated in previous line except none."

Dr. Cleveland testified that he treated the deceased in the winter of 1902 at Hewey's home for a bad cold or grippe. He also testified that subsequent to this treatment and prior to the making of the first application, on October 18, 1902, he treated Hewey at his office for liver disease. The defendant contended that the answers to questions 5 and 6 in the second application were fully authorized by the statements made by Hewey in answer to questions 6 and 7 in the first application and that the facts testified to by Dr. Cleveland, if true, constituted a breach of the warranty contained in the second application as to the truth of the facts therein stated. The plaintiff contended that the answers to questions 5 and 6 in the second application were not authorized by the facts stated in the first application and hence were not the answers of the deceased and were not binding upon him or upon this plaintiff.

Upon the comparative identity in meaning of the two applications, the court having analyzed them charged the jury as follows: "I think gentlemen, upon comparing these two applications, I shall instruct you thus: — If you find it to be true as Mrs. Hewey says, that that answer with the others was agreed to be filled in from the old application and if having the old application, they attempted to fill it in from that, but filled it in in the way which they did, that it was an unauthorized answer, that is to say, there is nothing in the former application with reference to Dr. Cleveland which made this answer true or proper and therefore it was not his answer. It was the answer which the agent put in." The answer referred to by the court was number 5 in the second application.

It is to this instruction that the answers in the second application are not warranted from those contained in the first that the defendants particularly object and say, "The court should have instructed the jury that the answers in the second application were fully authorized from those made in the first and that if they were untrue, the plaintiff could not recover." In this class of cases we think it a sound rule of law that an application for life insurance, signed in blank by one desiring insurance and filled in by the company or its agents,

should be construed more favorably to the applicant. Upon this view of the law, the construction of the presiding Justice should be sustained. The question in the first application "name and residence of your usual medical attendant, when and for what have his services been required," and the assertion contained in the second "the following is the name of the physician who last attended me, the date of the attendance and name of the complaint for which he attended me" cannot be fairly construed to mean one and the same thing or to require one and the same answer. If we were to stop right here, the two inquiries might elicit entirely different answers. . The "usual medical attendant" might not be "the physician who last attended the applicant." He might be ill, in need of medical attendance, and a variety of causes intervene to make it impracticable or even impossible for him to secure the services of his usual physician and consequently be under the necessity of employing some other physician. If this occasion happened to be the last time he needed medical attendance before making an application for insurance, then it is clear that the last medical attendant was not the usual one. But a fair analysis of the two applications requires us to go further. These questions and answers in the first application in the form of a statement are as follows: My usual medical attendant is Dr. Cleveland,—He attended me nine months ago for a cold,—I have not *consulted* any other physician since childhood for any illness except Dr. Leader four years ago for grippe.

In the second application the applicant is made to say, Dr. Cleveland was the physician who last attended him, the date was February 9, 1902, and the complaint for which he attended him was grippe;— also that he had not been under the *care* of any physician within two years unless as stated in the previous answer.

Now the defendants contend that by the observance of the proper rules of logic to their interpretation the two applications mean precisely the same thing. They say that the first application shows that Dr. Cleveland attended the applicant in 1902 and was the only physician that had attended him for four years as stated in No. 3; if he was the only physician he must necessarily have been the last one, as stated in the second application. Also that the answer numbered

6 that he had not been under the care of any physician for two years was fully authorized by the statement in the first application that Dr. Cleveland's services had been required only for the cold or grippe in the winter and further that he had not even consulted any physician for four years except Dr. Cleveland at the time he had this cold or grippe. If we admit that by the defendant's process of reasoning the above conclusions may be drawn, yet, is the applicant to be subjected to the test of reasoning by the process of induction and deduction in order to make the application made by the company agree with the application made by himself?

But the logical conclusions are not necessarily true. A different conclusion may also be drawn. In the first application he says he has not consulted any physician. In the second, filled in by the agent, he is made to say: I have not been under the care of any other physician, etc. "Consulting" a physician and being "under the care" of a physician, not only in the technical use of the terms but to the common mind may mean very different things. A man may consult a physician without ever being under his care at all. To consult is defined "to apply to for direction or information; "ask the advice of; as to consult a lawyer, to discuss something together; to deliberate." Care is defined, "responsibility, charge or oversight, watchful regard and attention." Hence the first answer might, in the mind of the applicant, be correct, and the second one not. We think the most that can be said with respect to the identity of the two applications is that if the applicant had read or been personally interrogated with respect to the questions and answers in the second application, he might have answered the same as he did in the first and he might have answered in an entirely different way. The answers in the second application cannot therefore be said to be such necessary inferences from those contained in the first as to be regarded as the statement of the applicant and therefore binding upon him. In order to defeat the claim of the person insured, who has paid the consideration required for the insurance received, upon the ground that the insured made misrepresentations as to the risk in his application, it is incumbent upon the company to show that the misrepresentations were his and not mistakes or misrepresentations of its own. When an

insurance company or its agents undertake to fill in an application from a previous application or statement made by the applicant, it should be held to the strictest adherence to the terms of such application or statement made, otherwise it would be in the power of the company or its agents in such a case to fraudulently destroy the legal status of the policy so obtained.

*Exceptions overruled.*