JOHN A. WATHEN DISTILLERY CO., PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103634.   Promulgated May 27, 1943.

*John E. Tarrant, Esq.,* and *Arthur W. Grafton, Esq.,* for the petitioner.

*Thomas F. Callahan, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* The law and regulations applicable to this proceeding are printed in the margin.[1]

We do not understand that there is any substantial dispute as to the facts in this proceeding. The real controversy is whether the letter which petitioner wrote Provident on April 29, 1935, as a basis for procuring a line of credit with that bank, followed by the acceptance by the bank of the terms of the letter and the making of a loan to

---

[1] SEC. 26. [Revenue Act of 1936.] CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*     \*     \*     \*     \*     \*     \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

ART. 26–2. [Regulations 94.] *Credit in connection with contracts restricting payment of dividends.*— \*   \*   \*

\*     \*     \*     \*     \*     \*     \*

(b) *Prohibition on payment of dividends.*—The credit provided in section 26 (c) (1) is allowable only with respect to a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends. If an amount can be distributed within the taxable year as a dividend—

(1) in one form (as, for example, in stock or bonds of the corporation) without violating the provisions of a contract, but can not be distributed within the taxable year as a dividend in another form (as, for example, in cash) without violating such provisions, or

(2) at one time (as, for example, during the last half of the taxable year) without violating the provisions of a contract, but can not be distributed as a dividend at another time within the taxable year (as, for example, during the first half of the taxable year) without violating such provision—

then the amount is one which, under section 26 (c) (1), can be distributed within the taxable year as a dividend without violating such provisions.

\*     \*     \*     \*     \*     \*     \*

petitioner, was a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operated within the taxable years as a legal restriction upon petitioner in the payment of dividends.

Respondent, in his brief, after citing a number of cases holding that the provisions of section 26 (c) (1) must be strictly complied with by the taxpayer corporation to secure the credit therein provided, says:

* * * From the strict test enunciated in these cases, it would seem that, for the purpose of said section 26 (c) (1), the contract restricting the payment of dividends should be in writing, that the various restrictions should be expressly stated therein, that it should be executed by the proper officer of the claimant, attested by the secretary and sealed with the corporate seal. * * *

We agree with all the foregoing requisites except that which says that the written contract must be "attested by the secretary and sealed with the corporate seal." There is no such formal requirement to be found in the statute or in the Treasury regulations.

In the instant case it was clearly the intention of the parties that the letter of April 29, 1935, should operate as a contract between the bank and petitioner. It was signed by "JOHN A. WATHEN DISTILLERY COMPANY By A. J. Harris President." It was personally delivered to Provident by Harris. The bank received the letter, placed it in its files, and immediately acted upon it by granting a line of credit of $50,000 and making a loan that day to petitioner of $25,000. This was enough, we think, to make the letter a binding contract between the parties, even though it did not contain the formalities of being attested by the secretary of petitioner and bearing the seal of the corporation. See on this point *Atlantic Co.*, 45 B. T. A. 657; affd., 129 Fed. (2d) 87. *Valvoline Oil Co.*, 47 B. T. A. 795. Therefore, we hold that the letter in question was a written contract executed by petitioner prior to May 1, 1936, which expressly deals with the payment of dividends. Whether it operated as a legal restriction upon petitioner as to the amounts which it could distribute within the taxable year as dividends, we shall now discuss and decide.

It is petitioner's contention that it could not legally distribute any dividends within the taxable year without first consulting Provident and securing its consent to the declaration and payment of dividends, and that, in each year, it did consult Provident and endeavored to secure such consent and failed. Petitioner also points out that it had oral agreements with its other bank creditors, based on its written agreement with Provident, that it would not declare any dividends without consulting them and securing their consent. It is clear, however, that, in determining credits to be allowed under section 26 (c) (1), oral agreements which a taxpayer may have entered into with

creditors restricting the payment of dividends are of no effect. Such oral agreements may be binding between the taxpayer and its creditors, but they are not recognized by section 26 (c) (1). Cf. *Sandura Co.*, 45 B. T. A. 491.

Thus it seems clear that a determination as to whether petitioner is entitled to the credit which it claims under section 26 (c) (1) depends upon a proper construction of the written agreement which it had with Provident on April 29, 1935. That agreement was evidenced by a letter (see the findings of fact) written by petitioner to Provident which contains the following language: "We might also state that we will not declare any dividend in the future, while indebted to your bank, without first consulting you." It is petitioner's contention that the foregoing language should be construed as if it read: "We might also state that we will not declare any dividend in the future while indebted to your bank without first consulting you *and securing your approval.*" (Emphasis supplied.)

If it is permissible to adopt petitioner's construction and construe the written contract for the purpose of applying the statute as if it contained the words underscored above, then we think the contract is one which falls within the ambit of section 26 (c) (1). See *Valvoline Oil Co., supra; Cotton States Fertilizer Co.*, 47 B. T. A. 748. We think the contract should be so construed. It is clear that this is the construction which the parties themselves placed upon the letter contract and acted upon, and we are not prepared to say that their construction was wrong.

The petitioner, in contending that the letter of April 29, 1935, coupled with the acceptance of its terms by the bank and the immediate granting of a line of credit to petitioner, constituted a written contract prohibiting the payment of dividends within the meaning of section 26 (c) (1) of the Revenue Act of 1936, relies chiefly upon the case of *Chess & Wymond, Inc.* v. *Glenn*, 40 Fed. Supp. 666; affirmed *per curiam* (C. C. A., 6th Cir.), 132 Fed. (2d) 621. We think this case is in point and supports petitioner's contention. We think the facts in the instant case are much stronger for the taxpayer than they were in *Chess & Wymond*.

In *Chess & Wymond* the First National Bank of Louisville, Kentucky, wrote Chess & Wymond a letter in which among other things it was said:

We understand that you feel obligated to declare and pay preferred dividends on your new issue requiring $28,000 per year. While we feel that it is wrong in principle for stockholders to withdraw money from this company in view of its present need, the amount is relatively small in relation to the contemplated earnings. We would definitely oppose the payment of such dividends, however, should the earnings fall under $30,000 per quarter.

Chess & Wymond replied to the bank as follows: "Thanks very much for your letter of December 18 which will be very helpful and is greatly appreciated." Following receipt of this letter the bank made Chess & Wymond a loan, which loan was still outstanding during the year which was involved. The court held that, notwithstanding that they made no mention of any specific prohibition against the borrower paying out dividends on its common stock during the pendency of the loan, these letters, taken together with the surrounding circumstances, constituted a written contract entered into prior to May 1, 1936, which prohibited Chess & Wymond from paying in excess of $28,000 dividends on its preferred stock and altogether prohibited the payment of any dividends on its common stock while the loan was outstanding.

In arriving at its decision the court, among other things, said:

* * * The Court should give great weight to the fundamental rule used in construing any written instrument, namely, that it should be construed according to the intention of the contracting parties as gathered from the words of the entire instrument and from the circumstances surrounding the parties at the time when the written agreement was made. * * *

The court then went on to hold that the taxpayer in that case was entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936 because it could not distribute dividends in the taxable years, except a limited amount under certain circumstances to its preferred stockholders, without violating a provision of a written contract executed prior to May 1, 1936, which provision expressly dealt with the payment of dividends. The decision of the lower court was affirmed *per curiam* by the Sixth Circuit in *Glenn* v. *Chess & Wymond, Inc., supra.*

In the instant case the petitioner had only one class of stock outstanding, namely, common stock. When two of its officers went to Cincinnati on April 28, 1935, to arrange a line of credit with Provident, the officials of that bank informed them that the bank would grant them a line of credit and make them an immediate loan provided petitioner would enter into a written contract that it would not pay any dividends without Provident's permission while it owed Provident money. These two officers of petitioner went back to Louisville and the letter shown in our findings of fact was immediately written by the John A. Wathen Distillery Co. and it was personally delivered to Provident and placed in its files and acted upon, as stated in our findings.

We think that, under authority of *Chess & Wymond Inc.* v. *Glenn, supra*, and our decision in *Valvoline Oil Co., supra*, this letter, coupled with the circumstances of its delivery to the bank and acceptance by the bank in making its loan, constituted a written contract entered

into by petitioner prior to May 1, 1936, which expressly dealt with the payment of dividends and operated as a legal restriction upon petitioner as to the amounts which it could distribute within the two taxable years before us as dividends. We so hold. This decides the only issue in the case in favor of petitioner.

Reviewed by the Court.

*Decision will be entered for petitioner.*

---

DISNEY, *J.*, dissenting: I am unable to concur in the majority view. In allowing a substitute for actual payment of dividends, by section 26(c) (1) of the Revenue Act of 1936, Congress pointedly and definitely intended to be strict, for the prerequisite to allowance of credit was a provision, written, express, dealing with payment of dividends, which would be violated by payment. Language could hardly be more explicit. So definite is it, that it does not refer to the contract in general, but to the particular *provision*. Perhaps other portions of the contract could be garnered from implications; but not the one described in section 26 (c) (1). *That* provision must be written, and not only so, but express on the point of dividends. Nothing is to be left to uncertainty, conjecture, or implication. This, I think, is the clear meaning of that language from *Helvering* v. *Northwest Steel Rolling Mills*, 311 U. S. 46, which says:

\* \* \* True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which "expressly deals with the payment of dividends."

To me this means that though ordinarily a written contract may, by reference or even implication, include other matter, in this case Congress intended that the provision in question "must be expressly *written* in the *executed* contract" (italics supplied), and not left to be supplied. Not only so, but this is only to accentuate the principle of strict interpretation of a provision relied upon for an exemption. I do not think that the requisite provision is found here. The written agreement here was merely not to declare dividends without first consulting. In *Hewey* v. *Metropolitan Life Ins. Co.*, 62 Atl. 600, "consult" is defined as: "To apply to or for direction or information; ask the advice of,—as to consult a lawyer." An agreement to consult is, obviously, not in and of itself an agreement to obey the advice of the consultee. The petitioner did not agree not to declare dividends; it agreed only that it would first consult. Only by implica-

tion and equity doctrine, if indeed at all, can we import into, or add to the language involved here, any element of agreement to be governed by the consultation. In the last analysis the agreement relied on by the majority is seen to lie, not in the written provision, but in the fact that the bank relied thereon. No written acceptance appears. In substance and effect, the conclusion of the majority has its basis in equitable estoppel, because of reliance by the bank upon the statement made by the petitioner. Congress, in my view, particularly intended to permit the credit upon no application of equitable doctrine, but only upon an express written provision. It was just the sort of loose and equivocal arrangement here found, having to rest upon something outside of written and express language, which the legislators, I think, did not intend to be base for the credit.

In *Hobbs-Western Co.* v. *Commissioner*, 133 Fed. (2d) 165, the court was urged to approve credit under section 26 (c) by consideration of the purpose of the agreement, the practical construction given the parties, and the fact that the payment could have been made from no source other than surplus profit or earnings. The reaction of the court was: "To concede arguendo that such a construction of the contract is reasonable does not aid the petitioner. So to construe the contract one must supply by implication a provision not expressly stated. One must by implication insert in section 10 a provision requiring the notes to be paid out of current earnings and profits. There is no such express provision in section 10." Not finding such express provision, the court denied the credit, citing *Helvering* v. *Northwest Steel Rolling Mills*, 311 U. S. 46, and *Helvering* v. *Ohio Leather Co.*, 317 U. S. 102. In *Helvering* v. *Nelson Co.*, 133 Fed. (2d) 846, considering the language of section 26 (c) (2), it is said:

\* \* \* The requirement that the contract must deal "expressly" with the disposition of "earnings and profits of the taxable year" cannot be satisfied by "implication" nor inference. The provision must be specific. Nothing less satisfies the requirements of the statute.

The word "consult" does not mean "agree," or to obey advice. The meaning of the word is almost a negation of that meeting of minds which is required for contract. The distinction between consultation and agreement is clear even in common parlance. In my opinion, no written provision within the purview of the statute can be found. I respectfully dissent.

Smith, Leech, Hill, and Opper, *JJ.*, agree with this dissent.