NATIONAL DAIRY PRODUCTS COMPANY, ELMER BROWN AND GEORGE HAGEMANN, ET AL., PROSECUTORS, v. MILK CONTROL BOARD OF THE STATE OF NEW JERSEY, DEFENDANT.

Submitted May 1, 1945—Decided December 3, 1945.

492

Before Justices Donges, Heher and Colie.

For the prosecutors, *Frank K. Sauer* and *Jay F. Dailey*.

For the defendant, *Walter D. Van Riper*, Attorney-General, and *John F. Bruther*, Deputy Attorney-General.

The opinion of the court was delivered by

Heher, J.   By an order made on September 8th, 1944, after a public hearing on due notice, the Honorable Arthur F. Foran, State Director of Milk Control, increased ⅜c per quart the existing minimum price of class I milk (in glass or paper containers) charged by processors to subdealers in the State's Marketing Area No. 4.   It was therein recited that on the prior February 22d, the Federal Office of Price Administration had permitted (by Order No. G-4) an increase of ½c per quart in the price of such milk chargeable by processors to subdealers in that area, based upon findings that "the present margin of 5½c per quart is higher than those of subdealers in any other part of New Jersey," and that "a subdealer margin of 5c per quart on to-the-home retail sales is sufficient to permit profitable operation of wholesale and retail routes;" that proof was adduced before the director "showing a continued loss by processors in 1944 of more than ½c per quart," and "moderate profits" by subdealers "but not as great as indicated in the opinion given by OPA, accompanying order No. G-4;" and that it was requisite that there be "an adjustment in the minimum price" of milk of this class between processors and subdealers in order to insure a "continued supply" to subdealers, "as far as production will permit," and thus render available to the public "a sufficient supply of fresh, wholesome, sanitary milk," in accordance with the design of *chapter 274 of the*

*Laws of* 1941. *Pamph. L., p.* 713; *N. J. S. A.* 4:12A–1, *et seq.*

While they did not participate in the proceedings before the director, prosecutors, all subdealers, took an appeal from the order to the State Board of Milk Control. That tribunal found that "the processors have sustained loss;" that "the net spread of the subdealers is sufficient to justify an increase of ¼c per quart;" and that such increase "will be beneficial to the processors and will give them relief and will alleviate their distressed situation." *Certiorari* was allowed to review this latter determination.

The first insistence is that the action taken by the director was based, not only upon evidence submitted at the public hearing, but also matters revealed by "a private investigation" conducted by him, and that there was "in fact no evidence in support of the need of processors generally" in the area in question "for an increase in the minimum price to be charged by them of subdealers," and no proof that the subdealers "could absorb this cost and at the same time be assured of a reasonable return."

*Sections* 21 and 22 (*N. J. S. A.* 4:12A–21, 4:12A–22) authorize the director to fix minimum milk prices "by investigation and proof, as the emergency permits," while *section* 23 (*N. J. S. A.* 4:12A–23) makes a "public hearing" after notice by "public advertisement" as therein provided a prerequisite to the exercise of the price-fixing authority; and it would seem to be implicit in the latter provision that the action taken shall not be made to rest upon undisclosed evidence or information *dehors* the record which the parties in interest have had no opportunity to test for trustworthiness and explain or rebut. *Railroad Commission of California* v. *Pacific G. & E. Co.,* 302 *U. S.* 388; 58 *S. Ct.* 334; 82 *L. Ed.* 319; *Ohio Bell Telephone Co.* v. *Public Utilities Commission,* 301 *U. S.* 292; 57 *S. Ct.* 724; 81 *L. Ed.* 1093; *St. Joseph Stock Yards Co.* v. *United States,* 298 *U. S.* 38; 56 *S. Ct.* 720; 80 *L. Ed.* 1033; *Morgan* v. *United States,* 298 *U. S.* 468; 56 *S. Ct.* 906; 80 *L. Ed.* 1288; *Interstate Commerce Commission* v. *Louisville, &c., N. R. Co.,* 227 *U. S.* 88; 33 *S. Ct.* 185; 57 *L. Ed.* 431; *Trustees of Sara-*

*toga Springs* v. *Saratoga Gas, E. L. and P. Co.,* 191 *N. Y.*
123; 83 *N. E. Rep.* 693; *Atchison, T. and S. F. Railway Co.*
v. *Commerce Commission,* 335 *Ill.* 624; 167 *N. E. Rep.* 831.
This regulatory power must be exercised conformably to the
procedure laid down in the statute.

. . When a judgment is grounded in matters °*extra* the evi-
dence introduced at the hearing, the parties have not been
accorded the fair and open hearing prescribed by the statute.
Agencies so empowered are under a peremptory duty to afford
opportunity through evidence and argument to challenge the
result and to act upon evidence and not arbitrarily. These
are of the essence of the hearing essential to due process; and
this is what the statute contemplates. "Due process" con-
·sists in the protection of the individual against arbitrary
action.

Rate-making is a legislative province. When the lawmaking
body itself acts within the broad domain of legislative discre-
tion, and does not exceed its constitutional powers, its deter-
minations are conclusive. But the legislature may exercise
the rate-making authority through a subordinate agency in
conformity with a certain and determinate policy and uni-
form rule of action; and it may endow the agent with power
to make findings of fact which are conclusive, if the exercise
of the delegated administrative authority is controlled by
requirements of procedural due process, among which is the
requisite that the findings have substantial support in the
evidence. The action is then subject to judicial superin-
tendency only if it is confiscatory and violative of property
rights. *St. Joseph Stock Yards Co.* v. *United States, supra;*
*Tagg Bros. & Moorhead* v. *United States,* 280 *U. S.* 420;
50 *S. Ct.* 220; 74 *L. Ed.* 524; *Florida* v. *United States,*
292 *U. S.* 1; 54 *S. Ct.* 603; 78 *L. Ed.* 1077; *State Board*
*of Milk Control* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504.

Under the original *Milk Control Act of* 1933 (*Pamph. L.,*
*p.* 353), the Control Board's function was purely administra-
tive. There was no requirement of a hearing on notice as a
*sine qua non* of the administrative process; and this is sig-
nificant of a legislative conception of the right to an inde-
pendent judicial review of administrative findings made

under that statute and a determination upon the law and the facts, as revealed by the record below and such new evidence as might be adduced, under the general provision embodied in *R. S.* 2:81–8, and thus to satisfy the demands of due process. The inquiry then was whether the price regulation was unreasonable or arbitrary, *i. e.*, not reasonably based in the facts and the law, or confiscatory and therefore in excess of constitutional powers. *State Board of Milk Control* v. *Newark Milk Co., supra. Vide Ohio Bell Telephone Co.* v. *Public Utilities Commission, supra.* But under the current statute the authority both of the director and of the board has a double facet, *i. e.*, administrative and *quasi*-judicial, for while the exercise of this regulatory power is essentially administrative, the ascertainment of the facts from the evidence presented at a public hearing, and the determination of the minimum rate in accordance with the facts found and the statutory policy, partake of the attributes of a judicial inquiry. And a hearing is not judicial unless the evidence can be known. *Ohio Bell Telephone Co.* v. *Public Utilities Commission, supra.* Without such disclosure, there obviously cannot be an adjudication on a judicial review as to whether the judgment is soundly based in law and in fact, and the statutory policy has been enforced within constitutional limits.

But we have no occasion to pursue the matter further. As we have seen, the director's order was made the subject of an appeal to the Control Board; and there the issues were tried *de novo,* and judgment was given after prosecutors were accorded a full hearing in keeping with the statutory mandate. All determinations made by the director are appealable to the board; and the board is empowered to "make reasonable rules regulating the manner, form, time, terms and conditions of such appeals * * *." *N. J. S. A.* 4:12A–9. And any order or determination of the board is reviewable on *certiorari,* at the instance of any one aggrieved thereby. *N. J. S. A.* 4:12A–12. Pursuant to the authority thus granted, the board adopted procedural regulations providing that all appeals shall be "heard *de novo;*" that the parties "may introduce oral testimony and documentary evidence," and also that the stenographic transcript of the proceedings before the director

"may be introduced in evidence;" and that the appellant shall carry the burden of proving error in the director's action, and appellant's evidence shall be first heard. The determinative inquiry therefore is whether the price rise directed by the board is well-founded in law and in fact.

While the *Milk Control Act, supra,* does not in terms render conclusive the board's findings of fact, if supported by tangible evidence, we do not apprehend that this court is obliged to weigh the evidence and exercise its independent judgment upon the facts, for if that were so, especially where new evidence was introduced under *R. S.* 2:81–8, the court would substitute for the administrative agency as the rate-making tribunal. As we have seen, rate-making is essentially a legislative process; and here the Legislature has declared the policy and clothed an administrative agency with authority to find, through a *quasi*-judicial inquiry, the facts upon which the operation of the policy depends. And it is reasonably clear that the design was to make these findings conclusive if they have a reasonable and substantial basis in the proofs. *Brandon* v. *Montclair,* 124 *N. J. L.* 135; *affirmed,* 125 *Id.* 367; *Potts* v. *Board of Adjustment of Princeton,* 133 *Id.* 230. This court may not substitute its discretion upon the facts for that of the agency organized by the Legislature itself to execute the legislative policy, and thus supplant the administrative tribunal as the rate-making body. Considering the nature of the function, it is fundamental in the statute that the court shall not exercise the discretion of either the legislature or its agent, selected on grounds of special fitness, within their respective spheres of action. *Vide St. Joseph Stock Yard Co.* v. *United States, supra; Tagg Bros. & Moorhead* v. *United States, supra.* Such is the case with the exercise of the public utility rate-making power, although there are differences in the statutes. *Rahway Valley Railroad Co.* v. *Board of Public Utility Commissioners,* 127 *Id.* 164.

But however all this may be, the evidence amply supports the board's findings and conclusion. The prescribed price increase is well-grounded in the considerations that serve the statutory minimum price policy. The stenographic transcript

of the proceedings before the director was introduced in evidence; and the director, himself, took the witness stand and testified as to all the factors that entered into his determination, whether based upon the evidence formally presented to him or otherwise received. Apart from the proof adduced by one of the processors of substantial losses suffered in the transaction of business in the particular area, the testimony of the director and an auditor who had analyzed financial reports made to the director by processors and subdealers demonstrate that the processors were all doing business at a loss, and that the profits of the subdealers were such as to enable them to absorb the directed minimum price rise and yet reap a fair and reasonable return. And there was no convincing evidence *contra*. The failure of individual processors to raise the price of milk of the class under consideration to the OPA ceiling is explained by competitive economic considerations.

There is a presumption that the order of the Control Board is a wholly reasonable and valid exercise of the power conferred; and the burden of proving the contrary is upon him who asserts it. *State Board of Milk Control* v. *Newark Milk Co., supra*. The interests of the processors and subdealers are secondary; the aim of the statute is the service of the public welfare through the economic stability and well-being of those engaged in the production, sale and distribution of milk, *i. e.*, by the provision of a sufficient supply of fresh, wholesome, sanitary milk. If experience demonstrates the need for a revision of the price level, the administrative jurisdiction may be invoked.

But it is insisted that the director was not a "competent witness," and that it was not proper to admit testimony from him as to matters *dehors* the evidence which entered into his determination. It is said that the director's order "must stand or fall upon the evidence adduced upon the hearing had before him." This criticism is groundless. The director was under no legal testimonial disqualification. It was manifestly proper to inquire as to the unrevealed evidence which influenced the making of the director's order, and thus to afford the parties in interest an opportunity to test and con-

trovert it. Appellants will not be heard to complain that all the evidence before the director was not spread upon the record, and then challenge the right to a full disclosure on the hearing *de novo* before the Control Board.

We find no factual basis for the contention that the Control Board permitted its counsel "to participate in the conduct of the hearing on the appeal, as if a member" of the board.

The record reveals that counsel merely gave legal advice bearing upon questions which arose in the course of the hearing.

And it is frivolous for prosecutors to assert that they were denied a hearing *de novo,* within the intendment of the cited rules of procedure, because the transcript of the testimony and proceedings before the director was admitted in evidence, and they were required to submit their evidence before the hearing of the evidence in support of the order under appeal. This, in effect, placed the *onus* of proof upon prosecutors; and we are aware of no principle or policy that vitiates a regulation which presumes the validity of the director's order and places the burden of proof upon the challenger. It was a reasonable exercise of the statutory rule-making power. And prosecutors were conceded an opportunity to summon and examine the witnesses who testified before the director, if they chose so to do. Moreover, they saw fit not to participate in the hearing held by the director, and thus to take advantage of the opportunity of cross-examination, knowing the transcript of the testimony there adduced would be admissible in evidence on the hearing of an appeal to the board. They were accorded a fair and open hearing by the board— one that fully safeguarded their substantial rights. They could not have more than this.

The order of the Control Board is accordingly affirmed, with costs.