8 N.J. Super. 172 (1950)
73 A.2d 735
JOHN BOGDA, JR., PLAINTIFF-APPELLANT,
v.
CHEVROLET-BLOOMFIELD DIVISION, GENERAL MOTORS CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1950.
Decided June 1, 1950.
*175 Before Judges COLIE, EASTWOOD and JAYNE.
Mr. Ira D. Dorian argued the cause for the plaintiff-appellant (Messrs. Greenstone & Greenstone, attorneys).
*176 Mr. Nicholas Conover English argued the cause for the defendant-respondent (Messrs. McCarter, English & Studer, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
Plaintiff appeals from a determination of the Division of Employment Security, Department of Labor and Industry, denying temporary disability benefits under a private insurance plan as authorized by P.L. 1948, c. 110, p. 590, § 8 (R.S. 43:21-32).
To clearly understand the issue, it is necessary to elaborate somewhat on the facts. Plaintiff was initially employed by defendant on July 16, 1943, as a packer and continued in that employment until December 3, 1943, when he was laid off; he was re-employed on April 23, 1945, as a material handler, in which capacity he worked until January 17, 1949, when he was transferred to the classification of a "unitizer," considered to be "light work"; during the course of a routine medical examination by the plant physician on December 29, 1948, it was discovered that plaintiff had an incomplete left inguinal hernia. After working approximately one month as a unitizer, plaintiff applied for and was granted a leave of absence to undergo a hernial operation; for the period from February 12, 1949, to April 5, 1949, he received temporary disability benefits; upon his return, plaintiff resumed his work as a unitizer from April 5, 1949, to June 3, 1949, when, together with other employees, he was laid off due to lack of work. He applied for and received unemployment compensation benefits until July 21, 1949. These benefits were terminated when he filed a claim for temporary disability benefits under the employer's private insurance plan for the period commencing June 3, 1949. The employer's insurer denied plaintiff's claim for payment of temporary disability benefits on the ground that he was able to perform the duties of his employment. Subsequently, plaintiff instituted an action for the payment of temporary disability benefits for the period in question, claiming that during that period he was convalescing *177 from the hernia operation and was not fit to perform the duties "of his employment" as a material handler until August 15, 1949. The hearing officer denied his claim on the ground that "the claimant, not being under the care of a legally licensed physician during the period of his disability, is not entitled to disability benefits from June 3 to August 15, 1949." This appeal ensued.
This issue raises three questions for our determination, viz.: (1) was the plaintiff's unemployment caused by lack of work; (2) was it caused by a non-occupational sickness "resulting in his total inability to perform the duties of his employment"; and (3) assuming his unemployment was caused by a non-occupational illness, did plaintiff comply with the pertinent provision of the statute P.L. 1948, c. 110, p. 595, § 15 (R.S. 43:21-39 (b)), and insurer's policy, by establishing that he was "under the care of a legally licensed physician."
This is a case of novel impression. Our research fails to reveal any decisions by our courts or the States of Rhode Island, California or New York, where temporary disability benefits plans are in effect, but which differ somewhat from the provisions of our statute.
The Temporary Disability Benefits Law, P.L. 1948, c. 110, p. 586 (R.S. 43:21-25 et seq.), was enacted under "The public policy of this State, already established, is to protect employees against the suffering and hardship generally caused by involuntary unemployment. But the unemployment compensation law provides benefit payments to replace wage loss caused by involuntary unemployment only so long as an individual is `able to work, and is available for work,' and fails to provide any protection against wage loss suffered because of inability to perform the duties of a job interrupted by illness. Nor is there any other comprehensive and systematic provision for the protection of working people against loss of earnings due to nonoccupational sickness or accident * * * to fill the gap in existing provisions for protection against the loss of earnings caused by involuntary unemployment, by extending such protection to meet the hazard of earnings loss *178 due to inability to work caused by nonoccupational sickness or accident." P.L. 1948, p. 586, § 2 (R.S. 43:21-26).
P.L. 1948, p. 588, § 5 (R.S. 43:21-29) defines compensable disability as follows:
"Disability shall be compensable subject to the limitations of this act, where a covered individual suffers any accident or sickness not arising out of and in the course of his employment or if so arising not compensable under the workmen's compensation law (Title 34 of the Revised Statutes), and resulting in his total inability to perform the duties of his employment."
Under Section 15 (R.S. 43:21-39), "* * * no benefits shall be payable under the State plan to any person * * * (b) for any period during which a claimant is not under the care of a legally licensed physician * * *." The employer's insurance policy uses the word "treatment" instead of "care."

I.
In determining the first question hereinabove posed, our examination of the record reveals that claimant was discharged because of lack of work on June 3, 1949, not because of a non-occupational illness that resulted "in his total inability to perform the duties of his employment." In fact, on June 10, 1949, the claimant filed a claim for unemployment compensation, which the unemployment agency refused to process until the employer filed a form stating that the cause of separation from employment was lack of work. His claim was approved and plaintiff received unemployment compensation until July 21st. Plaintiff contends that he originally asked for temporary disability benefits but was persuaded by the employer's representative that his claim was properly one for unemployment benefits. It seems clear from the evidence that the only reason for placing the employee "on sick leave of absence" on the company's records was for the express purpose of retaining certain pension and seniority rights to re-employment. The resulting change from a claim for unemployment *179 compensation benefits to temporary disability benefits arose out of negotiations between representatives of the employee's union and the employer. The disability benefits statute cannot be circumvented merely by an agreement of the employer and employee to grant a "sick leave of absence" when the facts do not support it. On the contrary, the proofs clearly indicate that plaintiff was entitled rather to unemployment benefits. The appeal might well be disposed of on this ground. However, we proceed to a consideration of the other questions.

II.
The plaintiff contends that he is entitled to disability benefits on the basis of his convalescence or recuperation from the hernia operation; that his return to work on April 5, 1949, as a unitizer until that work ceased should not prevent him from reverting to his sick status and receiving temporary disability benefits because of his total inability to perform the duties of "his employment," viz.: a material handler; that the discovery of the hernia caused his transfer from the heavier work to that of a unitizer. The plaintiff argues that the proper construction of the words "his employment" in the statute are referable to his employment as a "material handler"; and that when he was laid off on June 3, 1949, he had not as yet sufficiently recovered from his hernial operation to resume the duties of "his employment," a material handler. However, the record does not support plaintiff's contention. There is no evidence to substantiate his contention that the reason his employment was changed from that of a material handler to that of a unitizer was because of the discovery of the hernia. All the record reveals is that this condition was discovered by a routine examination by the plant physician on December 29, 1948; that, notwithstanding the condition, he continued to work as a material handler until January 17, 1949, when his classification was changed to unitizer. He worked at the latter classification until February 12th, when he was given a leave of absence for a hernial operation; that *180 when he recovered sufficiently to return to work on April 5, 1949, he resumed his employment as a unitizer; that he did that work until June 3d, when he was laid off because of lack of work. During the entire period from December 29, 1948, until June 3, 1949, there is no evidence that plaintiff contended that "his employment" was that of a material handler. It was only after he was laid off on June 3, 1949, after he had first applied for and received unemployment compensation benefits, that he filed any claim for temporary disability benefits on the ground that he was still suffering from the effects of his hernial operation and, therefore, unable to perform his work as a material handler. The record is clear that the plaintiff's employment at the time that he obtained his first sick leave of absence was that of a unitizer and there is no merit in his contention that it was that of a material handler.
Plaintiff insists that the period for which he now claims disability benefits represents a part of his convalescence from the hernial operation. This contention does not appear to be supported by the record. On April 5, 1949, when plaintiff returned to work after his operation, he was examined by the plant physician and found to be physically able to and did resume his full-time work as a unitizer. There is no claim or suggestion that his health was adversely affected thereby. As to the validity of plaintiff's contention that he was still recuperating or convalescing from his operation, it appears from the record that he did not see his attending physician, Dr. Embleau, after March 20, 1949. Except for the plant physician, Dr. Grundfest, who examined him on April 5, 1949, and found him "physically qualified to return to work," he did not see any doctor between March 20, 1949, and June 27, 1949  except a medical examination for a prior condition admittedly unrelated to this claim  on which latter date the plant physician again examined him. It appears, therefore, that no medical reason existed for plaintiff's stoppage of work on June 3, 1949, nor was there any basis in fact to support his contention. On July 26, 1949, Bogda presented a signed grievance, stating: "I charge management *181 with violation of the local ag't when it failed to recall me on July 26 even though I am physically fit."
The parties are in disagreement as to the construction to be placed upon that portion of Section 5 (R.S. 43:21-29), defining compensable disability as "total inability to perform the duties of his employment." The employee contends that it is evident that it does not mean an inability to perform any employment, but necessarily refers to the employment pursued at the time the disability was incurred and that, until such time as the employee is physically able to return to his original work, he is entitled to benefits for the period claimed. The employer contends that the reasonable construction of this provision is: "* * * the words `from engaging in any occupation or performing any work for compensation of financial value' as meaning: `from performing any work for compensation of financial value in his regular business and any other pursuit for which he was qualified and which he would reasonably be contemplated to pursue.'" Nickolopulos v. Equitable Life Assur. Soc. of U.S., 113 N.J.L. 450 (E. & A. 1934), at p. 456. The employer contends further that the evidence establishes that as a material handler the employee was receiving wages at the rate of $1.35 an hour and as a unitizer, $1.33 an hour, both plus the cost of living figure; that, in face of these facts, it is ridiculous to assert that plaintiff suffered a total inability to perform the duties of his employment, when in his "disabled" condition, he could earn substantially the same wage; that an insured is not totally disabled if he can perform, for a commensurate wage, lighter work than he previously engaged in, citing Testa v. Metropolitan Life Ins. Co., 136 N.J.L. 9 (Sup. Ct. 1947), in support thereof. The ill provided against is the failure "* * * to provide any protection against wage loss suffered because of inability to perform the duties of a job interrupted by illness. Nor is there any other comprehensive and systematic provision for the protection of working people against loss of earnings due to nonoccupational sickness or accident." P.L. 1948, p. 586, § 2, supra.
*182 To determine the legislative intendment of the phrase "total inability to perform the duties of his employment," reference to other provisions of the act is helpful. In construing a statute, it is clearly established that the sense of a law is gathered from its object, the nature of the subject matter and the whole of the context in the acts pari materia; that the parts of a statute are to be viewed in relationship to the whole and the motive which led to the making of the law, and reconciled, if possible, to carry out the reasonably probable legislative policy. Hackensack Water Co. v. Ruta, 3 N.J. 139 (1949). Our duty is to construe the statute and not judicially alter it. Adams v. Atlantic County, 137 N.J.L. 648 (E. & A. 1948). "* * * Our judicial function is confined to the interpretation and application of the comprehensive legislative phraseology in the light of its history, purpose and context. * * *" Ablondi et al. v. Board of Review, etc., 8 N.J. Super. 71 (App. Div. 1950). Reference to Section 20 (f), P.L. 1948, p. 598 (R.S. 43:21-4 (f)), of the Unemployment Compensation Act, provides that "An individual, totally or partially unemployed, shall be eligible to receive benefits with respect to any week only if it appears that: * * * (f) He has suffered any accident or sickness not compensable under the workmen's compensation law (Title 34 of the Revised Statutes) and resulting in his total disability to perform any work for remuneration, * * *" (italics ours). Section 15 (e) of the applicable statute (R.S. 43:21-39 (e)), provides that no benefits shall be payable "for any period during which the claimant performs any work for remuneration or profit." (Italics ours.) In considering the differentiation between the language employed under the quoted provisions and that used in the applicable provision, it is obvious that the Legislature intended that the employee was entitled to benefits if the non-occupational sickness or accident suffered by him while employed resulted in his total inability to perform the duties of the employment in which he was engaged at the time it was interrupted. Our conclusion is that the employee at the time that he was temporarily *183 separated from his employment for the hernial operation was working as a unitizer, and, therefore, he is not entitled to any temporary disability benefits. The act under review provides for a liberal construction thereof. Its stated purpose is to fill the gap in existing provisions for protection against loss of earnings caused by involuntary unemployment; that such protection was extended to meet the hazard of loss of earnings due to inability to work caused by non-occupational sickness or accident. The Unemployment Compensation Law which provided that an individual be "able to work and be available for work" failed to provide any protection against the wage loss suffered because of inability to perform the duties of a job interrupted by illness. It is clear that the Legislature did not intend to grant both unemployment and disability benefits for the same period of time. See P.L. 1948, p. 589, § 6 (R.S. 43:21-30).

III.
Assuming arguendo that plaintiff's unemployment was caused by a non-occupational sickness, it seems clear from the record that there was a non-compliance with the statutory provision requiring proof that he was under the care of a legally licensed physician. P.L. 1948, p. 595, § 15(b), (R.S. 43:21-39(b)). The employer's insurance policy provided that during the period of unemployment he was required to be under "treatment" by a legally licensed physician, whereas the statute employs the word "care." We are of the opinion that the statutory provision must prevail over the provision of the insurance policy. Section 8, P.L. 1948, p. 590 (R.S. 43:21-32), permits the establishment of private plans for payment of disability benefits in lieu of the state plan, which, however, may only be approved "if the commission finds that: * * * (b) eligibility requirements for benefits are no more restrictive than as provided in this act for benefits payable by the State plan;". Except for an examination made by Dr. Goldberg, for an old head injury, *184 which plaintiff concedes is not the basis for his claim for temporary disability benefits, his only other contacts were with the plant physician, who made four examinations of plaintiff at the instance of the employer. These examinations, under the circumstances, could not be construed as establishing a relationship of physician and patient. They were merely to determine the physical condition of the plaintiff at the time for employability purposes. The plant doctor did not undertake to prescribe for plaintiff nor assume responsibility in any respect for his physical welfare. Webster's New International Dictionary (2d Ed., 1949), defines "care" as follows:
"Charge, oversight, or management, implying responsibility for safety; as, under a doctor's care."
"Treat" is defined therein as:
"6. To care for (a patient) medically or surgically; as to treat one for rheumatism or with X rays; also, to seek a cure or relief of (a disease, etc.); as, to treat a bruise with hot application."
Defendant contends that: "The word `care' imports charge, oversight, watchful regard and attention. See Hewey v. Metropolitan Life Ins. Co., 100 Me. 523, 528, 62 A. 600, and see Bryant v. Metropolitan Life Ins. Co., 147 N.C. 181, 60 S.E. 893, where it is said that one who entrusts his case to a physician for regular and continuous treatment, thereby comes under the care of the physician." Lustenberger v. Boston Casualty Co., 300 Mass. 130, 14 N.E.2d 148 (Mass. Sup. Jud. Ct. 1938), at page 151. On the other hand, plaintiff contends that: "`Care' is not a word of rigid and inflexible meaning, but is one of broad comprehension admitting of a variation in its application to different persons and circumstances. It has no fixed and limited significance in law * * * nor in its common use. An accepted definition is, responsibility, charge or oversight, watchful regard and attention." Emery v. Wheeler, 129 Me. 428, 152 A. 624 (1930), at page 626. We are of the opinion that the word "treatment" *185 used in the private plan is more restrictive than the word "care" and, therefore, the language of the state plan must prevail over the provision of the insurance policy.
Plaintiff argues that the examinations made by the plant physician constituted a compliance with the statute and established conclusively that he was under the care of a legally licensed physician. We do not concur in that view. We think there is an utter absence of proof that he was under the care of a legally licensed physician within the generally accepted meaning and understanding of the word "care" as used in the statute. This lack of medical care continuing uninterruptedly as it did from March 20, 1949, lends credence to the contention of defendant that subsequent physical examinations during the period of unemployment were for the sole purpose of determining plaintiff's employability and did not constitute the care, oversight or attention of a physician curing an ill. Consultations with a physician for diagnostic purposes or for a periodic check-up, do not constitute care of a legally licensed physician within the intendment of the statute. Metropolitan Life Insurance Co. v. Urback, 138 N.J. Eq. 108 (E. & A. 1946); Metropolitan Life Insurance Co. v. Sinett, 2 N.J. Super. 506 (Ch. Div. 1949).
The determination of the Disability Insurance Service, Division of Employment Security of the State Department of Labor and Industry, is affirmed.