14 N.J. Super. 269 (1951)
81 A.2d 799
JOSEPH CARBONE, SR., AND DEPARTMENT OF LABOR AND INDUSTRY, DIVISION OF EMPLOYMENT SECURITY, DISABILITY INSURANCE SERVICE, PLAINTIFFS-RESPONDENTS,
v.
ATLANTIC YACHTING COMPANY AND AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1951.
Decided June 6, 1951.
*271 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Harry Miller argued the cause for appellants.
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
This appeal brings up for review the determination of facts and order of the hearing officer of the Department of Labor and Industry, Division of Employment Security, Disability Insurance Service, by which appellant, American Casualty Company of Reading, Pennsylvania, as carrier under a private insurance plan approved under the Temporary Disability Benefits Act (R.S. 43:21-25 et seq.), was ordered to pay disability benefits to the plaintiff, Joseph Carbone, Sr.
Plaintiff ceased active employment as a cook with defendant employer on June 27, 1950. He claimed he did so because of illness, "involutional melancholia." The order on appeal directed appellant to pay plaintiff disability benefits from August 2, 1950, to November 3. 1950.
Eligibility requirements for benefits under a private plan may be no more restrictive than as provided by the statute for benefits payable by the state plan. R.S. 43:21-32(b); *272 Bogda v. Chevrolet-Bloomfield Div. General Motors Corp., 8 N.J. Super. 172 (App. Div. 1950). Under the terms of appellant's policy, qualifications for benefits are substantially the same as the qualifications prescribed by the statute for employees covered by the state plan. Plaintiff was not entitled to benefits unless his disability existed when his employment terminated on June 27, 1950, or occurred within two weeks thereafter (cf. R.S. 43:21-27 and 43:21-39(a)) and unless he gave written notice of his disability to appellant within 30 days of the date he first came under the care of a "legally qualified physician, surgeon or dentist" (cf. R.S. 43:21-49 and 43:21-29.1), although failure to furnish notice within the time provided would not invalidate his claim if it were shown not to have been reasonably possible to furnish such notice and that such notice was furnished as soon as was reasonably possible (cf. R.S. 43:21-49). However, even if these eligibility requirements were met, benefits were payable only for periods during which plaintiff was actually under the care of a legally licensed physician (cf. R.S. 43:21-39(b)), Bogda v. Chevrolet-Bloomfield Div. General Motors Corp., supra.
The determination of facts incorporates findings, (1) that plaintiff's termination was occasioned by illness, (2) that he first consulted his physician on August 2, 1950, (3) that within 30 days thereafter, namely, on August 30, 1950, he mailed a notice of disability to the Disability Insurance Service, and (4) that he was under the care of his physician for the disability from August 2, 1950, to November 3, 1950, the date of the hearing hereinafter mentioned. Upon these findings the payment of benefits for the period from August 2, 1950, to November 3, 1950, was ordered.
When a claimant for benefits under an approved private plan is unable to agree with his employer or the insurer as to benefits thereunder, R.S. 43:21-50 authorizes the claimant, within one year after the beginning of the period for which benefits are claimed, to file a complaint with the Division of Employment Security. The Division is empowered *273 to conduct such investigation, including informal hearings, as it deems proper, and, if the issues raised by the complaint are not settled, to conduct a formal hearing before a hearing officer upon due notice to all parties in interest under procedural rules and regulations promulgated by the Division "providing for a fair and impartial hearing" at which "any party in interest shall have the right to appear." The proceedings are to be recorded and "at such hearing evidence, exclusive of ex parte affidavits, may be produced by any party, but the hearing officer, in conducting the hearing, shall not be bound by the rules of evidence."
The hearing officer is required to make "a determination of facts, and an order disposing of the issue presented, which shall be final and binding on the claimant, the employer and the insurer," and a copy of which order is to be served by registered mail upon each of the interested parties. Any party aggrieved by the action of the hearing officer has a right of review in the Superior Court, which under Rule 3:81-8 is by appeal to the Appellate Division, and "in such event the record of the proceedings shall be transcribed and the entire record of the disputed claim shall be duly certified to the Superior Court."
It is plain that the function under the statute is not administrative or ministerial, but quasi-judicial. Penn. R.R. Co. v. N.J. State Aviation Commission, 2 N.J. 64 (1949).
Plaintiff and appellant were unable to agree that plaintiff was entitled to benefits, and on November 3, 1950, a hearing under the statute was held before the hearing officer. The gist of appellant's argument on this appeal is that the hearing officer's determination of facts was not made upon the evidence adduced at the hearing, but upon information extra such evidence collected ex parte after the hearing by the hearing officer and not spread upon the record or disclosed to appellant and which appellant had no opportunity to explain or analyze, cross-examine upon, rebut or refute.
If appellant's contention is true in fact, the order is void. The fundamentals of a fair hearing are denied if a *274 hearing officer, required under this statute to reach a decision upon a hearing, does so, not upon the evidence adduced but upon undisclosed evidential facts outside the record. "No determination can be permitted to rest upon undisclosed findings or information dehors the record. If such could be the parties would be denied the essence of a hearing, they would be kept in ignorance of the things controlling the action * * * and due process would be flouted. The rights of the parties can only be protected, both in the trial tribunal and on review, by a full disclosure on the record of the facts relied upon for * * * findings." Giordano v. City Commission of the City of Newark, 2 N.J. 585 (1949); Penn. R.R. Co. v. N.J. State Aviation Commission, supra; National Dairy Products Company v. Milk Control Board, 133 N.J.L. 491 (Sup. Ct. 1945); Morgan v. United States, 298 U.S. 468, 80 L.Ed. 1288 (1936) (first case), 304 U.S. 1, 82 L.Ed. 1129 (1938) (second case).
Comparison of the findings with the transcript before us discloses a deficiency of proofs to support the findings upon vital issues, and our review of the record persuades us that the determination made is to be explained only upon the inference that the hearing officer in fact conducted, as he intimated at the close of the hearing he proposed to do, an ex parte investigation and relied upon the information thus obtained to remedy the deficiency.
The only sworn testimony at the hearing was that of the plaintiff. The hearing officer's finding was that plaintiff first consulted his physician on August 2, 1950. Plaintiff's testimony was that he was being treated prior to June 27, 1950, by his physician and saw the physician on June 28, the day after he quit work. He expressly denied that it was not until August 2 that he saw the doctor. If plaintiff's statement is true, his claim was out of time, if not noticed until August 30, 1950, as found by the hearing officer, and if, as stated by the hearing officer at the hearing, no good reason appeared for failure to furnish notice within 30 days after June 28.
*275 Nor is there sufficient evidence to support the hearing officer's finding that plaintiff was under the care of the physician from August 2 to November 3, 1950. There is a definite discrepancy as to when after he quit work plaintiff was hospitalized. The finding is that he entered a hospital on September 6 and was discharged on September 16. That is not supported by anything in the record. Similarly, the finding that plaintiff was confined to his bed for two weeks after he left his employment has no basis in the testimony.
Finally, the hearing officer found that the essential notice, the giving of which is a condition precedent to the right to benefits, was evidenced by a notice of claim mailed by plaintiff to the Disability Insurance Service on August 30, 1950. Yet, the notice is not in the record.
We are persuaded that the findings essential to the validity of the order rest upon information apparently gleaned from the examination of hospital and similar records and from interviews with the physician and at least one fellow employee of the plaintiff. We are in the dark as to exactly what the hearing officer did or learned, because none of the information was incorporated in the record. Further, it does not appear from anything in the record that appellant was apprised of what the information was or was given an opportunity to challenge or meet it.
The prejudice to appellant's right is strikingly illustrated by one consequence of this highly irregular procedure. The appellant charged that plaintiff quit his job not because of illness but to open a restaurant of his own in the name of one of his children. Plaintiff himself admitted at the hearing that he had spent a few days in the middle of July at that restaurant, but insisted that he was merely giving his daughter the benefit of his advice and experience and that he received no remuneration for his service. The vital question whether the termination actually was occasioned by sickness seems to have been resolved against appellant by the hearing officer, not upon any testimony taken at the hearing, but seemingly upon the basis of information obtained by an *276 interview with an unidentified fellow worker of the plaintiff. We are impelled to reach this conclusion in the absence of any proof in the transcript to support the hearing officer's finding, "A co-worker who called on him, on his own accord, to ask whether he would return to work for the Fourth of July rush, was unable to talk to him because of his sickness." (Italics supplied.)
We have not overlooked the provision of R.S. 43:21-50, that the hearing officer "in conducting the hearing, shall not be bound by the rules of evidence." That provision does not license the practice followed here. Ex parte statements from witnesses, the use of which statements is unknown to affected parties and is not consented to by them, can under no circumstances supply the evidence upon which the findings required by the statute must rest. That is clear from the provision of R.S. 43:21-50, which expressly excludes ex parte affidavits as evidence.
It may be that appellant could not complain of the hearing officer's reliance upon the alleged notice of August 30, 1950, notwithstanding the absence of formal proofs of its receipt, if that notice is among the official records of the Division, and if it appeared that appellant had knowledge of its existence and had been given an opportunity to be heard as to its sufficiency. However, we have no way of determining questions raised by appellant as to the notice, because that important evidential matter was not made part of the record brought to us for review. This omission implicates considerations of appellate review. How is it possible for this appellate court to review the evidence and intelligently decide that the hearing officer's finding as to this essential was supported by that evidence, when the evidence that he approved is not disclosed and is unknown? As Mr. Justice Cardozo observed in Ohio Bell Teleph. Co. v. Public Utilities Com., 301 U.S. 292, 81 L.Ed. 1093 (1937), "In such circumstances judicial review would be no longer a reality if the practice followed in this case were to receive the stamp of regularity." Granted that a hearing officer has greater latitude to receive and rely *277 upon evidence which would not meet the test of admissibility under strict rules of evidence, nonetheless, and without intimating any view upon the question how far in this type of proceeding such latitude should be allowed, we hold that it behooves the agency to incorporate in the record any evidence relied upon to support the findings and order of the hearing officer so that this court and all parties interested will be fully apprised of the basis of the determination. See Giordano v. City Commission of the City of Newark, supra.
This record exhibits patent error bordering on arbitrary action and requires a re-hearing of plaintiff's claim and a determination upon a hearing pursuant to the requirements of the statute.
The determination and order is reversed and the cause is remanded with direction that plaintiff's claim be re-heard and the issues determined in conformity with the law.