MAINE MUTUAL FIRE
INSURANCE COMPANY

v.

Larry E. WATSON.

Supreme Judicial Court of Maine.

Argued May 6, 1987.
Decided Oct. 22, 1987.

William J. Kelleher (orally), Augusta, for plaintiff.

Martha C. Gaythwaite (orally), Friedman & Babcock, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS *, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

NICHOLS, Justice.

This appeal raises the threshold question of whether this insurer is liable to its insured for the replacement value of the insured's home that was destroyed by fire, and ultimately, whether the insurer should be held liable to the insured for interest on a late payment of a claim, and the insured's

---

* Roberts, J. sat at oral argument and took part in the initial conference but participated no fur-      ther.

attorney's fees generated in pursuit of that payment.

The Plaintiff, Maine Mutual Fire Insurance Company (MMFIC), appeals from a judgment of the Superior Court (Franklin County) entered after a jury-waived trial, contending that the trial court committed reversible error in finding the Plaintiff liable to its insured, the Defendant, Larry E. Watson, for the replacement value of the home inasmuch as the insured had not made a proper claim for the loss, and in its award to the insured of his additional living expenses when the insured had waited more than 60 days after the loss to file his proof of loss claim. Further, the Plaintiff insurer claims that the insured was not entitled to a recovery for sanctions pursuant to 24–A M.R.S.A. § 2436 (Supp.1986) because the claim was paid by the insured in a timely manner.

We find no error and affirm the judgment.

This appeal arises out of a fire that occurred on April 15, 1983, in Farmington, destroying the Defendant's home, which was insured by the Plaintiff. The limits of the policy issued by the Plaintiff to the Defendant were (1) $50,000 for total loss and replacement, (2) $25,000 for personal property loss, (3) $10,000 for additional living expenses (ALE) and (4) compensation for removal of debris.

Immediately after the fire the Defendant notified the agent of his loss, and a week later he met with a claims adjuster employed by the Plaintiff. This adjuster testified at trial that he offered the Defendant $30,000 to $35,000 based upon his assessment of the actual value of the loss, so that the insured "could start his rebuilding process." The parties agree that the adjuster also told the Defendant that under the terms of the insurance policy the insured could receive an amount representing either (1) the actual cash value of the house, or (2) the repair or replacement value, to the limits of the policy. The adjuster added, however, that in order to recover the repair or replacement value the terms of the policy required him to "completely repair or replace in 180 days."

The initial appraisal of the property revealed an assessment of $56,000 to replace the structure, which had an actual value of $30,000 before being destroyed by fire. The Defendant testified that at a meeting on April 22, 1983, and from that point forward, he informed the Plaintiff that it was his desire to have the home rebuilt. The two parties soon entered into a tentative agreement to settle the entire claim for $66,000, but in July the Plaintiff rejected this proposal without notice or explanation. The Defendant then sought legal advice, and in August he submitted his first written "notice of claim" but still had made no claim for any additional living expenses. He testified at trial that he made no claim for the latter until November, 1984, because until that date he had been living rent-free with his mother and so he was not sure if he was entitled to recover additional living expenses, and because he wanted to wait until his primary claim was resolved.

On December 29, 1983, the Plaintiff presented the Defendant with a check in the amount of $24,000. That figure represented $16,000 for the actual cash value of the home, $8,500 for the Defendant's personal property, and $1,500 for demolition and debris removal, minus $2,000 that had been advanced to the Defendant immediately after the fire to cover his immediate expenses. This December check contained a condition that acceptance would constitute "final settlement" of the Defendant's entire claim under the policy; which would prevent the Defendant from later claiming a recovery for the replacement cost of the home or for additional living expenses. Eventually, the Defendant's attorney negotiated the issuance of a second check that had no such restrictions. When no further monies were forthcoming, the parties moved toward litigation, with the Plaintiff on April 9, 1984, filing this declaratory judgment action seeking an adjudication in Superior Court of the rights of the parties under the policy of insurance, and specifically asking for a declaration that the Defendant was only entitled to $24,000 for his loss.

On appeal here, the Plaintiff's threshold claim is that the trial court should have found that the Defendant was not entitled to any claim for additional living expenses because he filed his proof of loss more than sixty days after the loss. The pertinent clause of the policy reads:

> *Requirements in case loss occurs.* The insured shall give immediate written notice to this Company of any loss ...; and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall provide to this Company a proof of loss....

The court found, and the parties agree, that the Defendant did not make a written claim for ALE until November 15, 1984, more than a year and a half after the fire. The trial court held, therefore, that "any award for ALE commences from mid-September 1984," thus allowing a recovery only for those losses incurred sixty days before the filing of the written claim for additional living expenses, or a total of $8,012.72. The Defendant does not challenge the amount of the award.

■ The decision of the trial court was clearly not erroneous, and can be supported by either a plain reading of the policy, or by an application of the rules of insurance policy interpretation. "Additional living expenses" are defined by the policy as "any necessary increase in living increases incurred by you so that your household can maintain its normal standard of living." Thus, by their nature such expenses are incurred as a result of a fire loss, and arise continually over the period of time. The Plaintiff's claims manager testified that policyholders usually only make claims for reimbursements after those expenses have been incurred, and that there is nothing wrong with such a practice. Therefore, in view of preceding statements, the interpretation urged upon us by the Plaintiff is not only at odds with a plain and logical reading of the policy language but with the interpretation of that language by the Plaintiff's claims manager. We shall not adopt such an interpretation.[1]

The Plaintiff argues that the proof of loss provision of Clause 5 is a condition precedent to recovery for these expenses. It has long been the rule in this jurisdiction that a condition precedent in a policy of insurance, requiring an account for a loss, is to be liberally construed in favor of the insured. *Bartlett v. Union Mutual Fire Ins. Co.,* 46 Me. 500, 502 (1859); *see also North Berwick Co. v. New England F. & M. Ins. Co.,* 52 Me. 336, 340–41 (1864) (forfeiture conditions are to be strictly construed). Without a clear statement that the "loss" referred to as a timing mechanism is the initial loss by fire, and that a failure to make a written claim for additional living expenses within sixty days of that loss will automatically preclude all recovery for such expenses, we decline to infer such an unreasonable and strict forfeiture provision into the policy. An award is particularly appropriate in this case, as the Plaintiff failed to show that it was in any way prejudiced by the late filing of the proof of loss claim. *See Ouellette v. Maine Bonding & Casualty Co.,* 495 A.2d 1232 (Me.1985).

■ The second contention raised by the Plaintiff is that the trial court erred in granting the Defendant a recovery for the replacement value of the home, allowing the Defendant a year from the date of judgment to replace the home and incur replacement costs. The thrust of the Plaintiff's argument is that the Defendant never replaced, nor began to replace his home, as required by the policy to be eligible for a recovery based on the replacement value. Thus, the Defendant should have been limited, at most, to a recovery based on the

---

1. The most that could be said for the Plaintiff's argument on this score is that the "loss" referred to in Clause 5 of the policy is ambiguous in that one is uncertain whether this word, for timing purposes, means the initial loss by fire, or means the loss that is the additional expenses incurred as a result of the fire. However, even if this language is ambiguous the rules of insurance policy construction would call for the same result as reached by the trial court, since the ambiguity created by the insurer will be interpreted most strongly against it. *Gross v. Green Mountain Ins. Co.,* 506 A.2d 1139, 1141 (Me.1986); *Baybutt Const. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 921 (Me.1983).

actual cash value of the home. The Plaintiff then argues that its obligation under the contract was completely satisfied when it tendered a check to the Defendant in an amount equal to the home's actual cash value.

We decline to accept the Plaintiff's argument. To do such would be to ignore the critical factual occurrence in this case, which is the blatant misrepresentation of the policy language that was made to the insured by the insurer's adjuster. Both parties agree that one week after the fire the Plaintiff's adjuster told the Defendant that the policy required that in order to claim replacement value the insured would have to rebuild completely or replace the structure within 180 days of the fire. The insured testified at trial that he understood the adjuster to mean "that's every last board and nail; and if I didn't complete it in that time, the rest of it would come out of my pocket." Notwithstanding requests by the Defendant, and eventually his attorneys, for an explanation and an instruction as to where in the policy such language could be found, none was forthcoming. The pertinent clause of the policy merely provides a procedural mechanism for an insured who may make a claim based on actual cash value, and later make an additional claim on a replacement cost basis, if such claim is made within 180 days of the additional loss.[2] The interpretation espoused by the adjuster was contrary to the official interpretation adopted by MMFIC, and the interpretation that had already been given an identical clause by us in *Blanchette v. York Mutual Ins. Co.*, 455 A.2d 426, 428 (Me.1983), decided just two and one-half months before the loss of the Defendant's home. The Plaintiff was made aware of the misstatement made by its adjuster, and yet neither the company nor the adjuster took any affirmative steps to correct the error. The Defendant was

allowed to continue to labor under the false impression created by the adjuster. The Plaintiff seems to take the position that its nonfeasance was allowable because the insured eventually had legal representation. That, of course, is no excuse whatsoever. Throughout the entire processing of his claim the Defendant was never certain the insurer was going to recognize his claim. The direct result of this uncertainty was the delay of the start of construction. To agree with the Plaintiff would be to allow a party to take advantage of his own wrong, which we will not countenance. *See* Couch, *Couch on Insurance*, ch. 49A § 71:1 (2d ed. 1982); *see also Hewey v. Metropolitan Life Ins. Co.*, 100 Me. 523, 528, 62 A. 600, 602 (1905) (in order to defeat the claim of the insured, it is incumbent upon the company to show that the misrepresentations were his own, and not mistakes or misrepresentations of their own).[3]

■■■ The Plaintiff also takes issue with the trial court's determination that the Defendant should be given one year from entry of the judgment, as a "reasonable time" to replace or rebuild the home and be reimbursed for replacement costs. Neither the policy nor the statute establishes a deadline for the completion of the replacement or rebuilding construction. When no time for performance is specified in the contract, a "reasonable time" is implied. *Fortin v. Wilensky*, 142 Me. 372, 378, 53 A.2d 266, 269 (1947). When, as in this case, the facts are undisputed, what is a "reasonable time" raises a question of law. *Franklin Paint Co. v. Flaherty*, 139 Me. 330, 331, 29 A.2d 651, 652 (1943). The conclusion of the Superior Court on this issue was not error.

The final contention raised by the Plaintiff is that the trial court erred in awarding interest and attorney's fees to the Defend-

2. The relevant clause of the policy provides: (5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

3. Because the Defendant never raised the question of whether the misrepresentation by the adjuster, and the subsequent nonfeasance by the company, would be a violation of 24–A M.R.S.A. §§ 2152 and 2153 (1974) of the Insurance Code, we express no opinion whatsoever on that question.

ant. The court made the award pursuant to 24–A M.R.S.A. § 2436 (Supp.1986)[4] based on the insurer's failure to pay the insured the actual cash value of the home and personal belongings. The trial court found that "[i]t is undisputed that the $26,-000 was due Watson by January 13, 1984." The court compounded the one and one-half percent, per month interest rate from mid-January 1984, until February 15, 1985, the date the Plaintiff issued an unrestricted check for $24,000 to the Defendant.

The substance of the Plaintiff's argument is that the Defendant never claimed a recovery for the "actual value" of his loss, but only for the "replacement value" which at all times was disputed. The insurer argues that in order to become applicable at all, section 2436 requires that a claim must first be made, and the claim must be undisputed, and the failure of both elements leaves section 2436 inapplicable.

The Plaintiff's argument is utterly without support in the record before us. The first attorney to represent the Defendant on this matter testified at trial that he and his client had originally proceeded on an "actual value" basis of recovery, and this intent was made known to the Plaintiff. In

a letter and a proof of loss statement of August 17, 1983, he notified his insurer that he was then making the election that was available to him under Clause 3(c)(5) of the policy to proceed on a "replacement cost" basis. The testimony of the attorney was supported by the letter and proof of loss statement that was entered into evidence at trial.

■ Soon after the fire the Defendant met with an adjuster for the Plaintiff, and quoted to him that his "actual value" loss was $30,000 for the structure and $26,500 for the personal property. Not satisfied with these figures, the Plaintiff contested the claim of its insured, and the question of the amount of the Defendant's loss was eventually submitted to appraisers, pursuant to 24–A M.R.S.A. § 3002 (1974).[5] On December 14, 1983, the appraisers determined the actual value of the insured's loss to be $16,000 for the building, $8,500 for personal property and $1,500 for debris removal, for a total of $26,000. Thus, pursuant to section 2436 and 24–A M.R.S.A. § 3002 (1974) the portion of the Defendant's claim representing the "actual cash value" was undisputed as of December 14, and became due one month after the arbi-

**4.** 24–A M.R.S.A. § 2436 "Late payment," provides:

> A claim for payment of benefits under a policy of insurance against loss delivered or issued for delivery within this State is payable within 30 days after proof of loss is received by the insurer and ascertainment of the loss is made either by written agreement between the insurer and the insured or by filing with the insured of an award by arbitrators as provided for in the policy, and a claim which is neither disputed nor paid within 30 days is overdue; provided, however, that if during the 30 days the insurer, in writing, notifies the insured that reasonable additional information is required, the undisputed claim shall not be overdue until 30 days following receipt by the insurer of the additional required information.
> An insurer may dispute a claim by furnishing to the insured, or his representative, a written statement that the claim is disputed with a statement of the grounds upon which it is disputed.
> If an insurer fails to pay an undisputed claim, or any undisputed part thereof when due, the amount of the overdue claim or part thereof shall bear interest at the rate 1½% per month after the due date.

> A reasonable attorney's fee for advising and representing a claimant on an overdue claim or action for an overdue claim shall be paid by the insurer if overdue benefits are recovered in an action against the insurer or if overdue benefits are paid after receipt of notice of the attorney's representation.
> Nothing in this section shall prohibit or limit any claim or action for a claim the claimant shall have against the insurer.

**5.** 24–A M.R.S.A. § 3002 provides in pertinent part:

> *Appraisal.* In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. . . .

trator's decision, or on January 13, 1984, as the trial court determined. *Depositor's Trust v. Farm Family Life Ins.*, 445 A.2d 1014, 1018 (Me.1982).[6]

The insurer tendered a check in the amount of $24,000 to the insured on December 29, 1983. (Two thousand dollars had been paid to the insured immediately after the loss). However, the tendered check contained conditional language, stating that acceptance would constitute "full satisfaction of all claims and demands for loss and damage." It cannot reasonably be claimed that this conditional draft was effective to discharge the insurer's duty, and bar further recovery under section 2436 for late payment, as negotiation of that draft may have barred the insured from any further recovery on a "replacement value" basis. *See Stultz Electric Works v. Marine Hydraulic Engineering Co.*, 484 A.2d 1008 (Me.1984); 14 M.R.S.A. § 155 (1980); *Couch on Insurance* § 59.91 (2d ed. 1982). There was no error in the trial court's conclusion that the insured was entitled to (a) attorney's fees incurred in pursuit of the payment based on the appraiser's evaluation, and (b) to interest accrued to February 15, 1985, the date when the unconditional check was issued to the Defendant.

The entry is:

Judgment affirmed.

All concurring.

---

**6.** The insured does not contend on appeal that the interest award should have been compounded with the "replacement value" serving as the principal, and so we do not address that question.