MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 12
Docket:       Yor-18-211
Argued:       December 11, 2018
Decided:      January 24, 2019

Panel:        ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

YORK COUNTY et al.

v.

PROPERTYINFO CORPORATION, INC.

PER CURIAM

[¶1]  York County and the York County Registry of Deeds (collectively, York County) appeal from a judgment of the Superior Court (York County, *O'Neil, J.*) granting summary judgment to PropertyInfo Corporation, Inc. on York County's complaint alleging breach of contract and unjust enrichment. The action was based on PropertyInfo's failure to digitize and make accessible all documents filed with the York County Registry of Deeds between 1940 and 1965.  York County asserts that the court erred in its determination that its claims were barred by the statute of limitations.  We affirm.

## I. CASE HISTORY

[¶2] The following facts are taken from the parties' supported statements of material fact, viewed in the light most favorable to York County as the nonprevailing party. *See Pushard v. Bank of Am., N.A.*, 2017 ME 230, ¶ 13, 175 A.3d 103.

[¶3] On December 3, 2003, York County and Landata, the predecessor-in-interest to PropertyInfo, entered into a contract—called a "master agreement"—for Landata to digitize and make available to the Registry and the public an indexed collection of registered documents. The contract required Landata to provide the Landscan System and Services (LSS), comprising hardware, software, and services components. Listed among the "SERVICES" to be supplied was "Conversion of Existing Indexes."[1]

[¶4] The contract did not specify any implementation deadlines other than that Landata "will work with [York County] to develop a mutually agreeable implementation schedule for the LSS," and that the contract was to "remain in effect until Agreement expires, or until terminated for breach of contract." The term of the contract was "five (5) years, beginning on the date

---

[1] Although not at issue here given the court's conclusion that the statute of limitations barred the claims, the master agreement provided, "No action, regardless of form, may be brought by either party more than two years after the cause of action has arisen . . . ."

documents are processed through the LSS," but could "be renewed for any length of time upon written mutual agreement of both parties." On May 2, 2005, York County and Landata entered into an "Equipment/Software Contract Supplement" by which Landata agreed to provide the following:

> Professional services to include:
> - Create and enter an index for the images created from microfilm. Indexed data and images will be imported into the Registers' [*sic*] on site database and the Registers' [*sic*] Internet database. The following fields will be indexed:
>     (1940-1965)
>
>     Book/Page
>     Grantor/Grantee
>     Town
>     Instrument type
>     Related Documents (Book/Page only)
>     Instrument Date
>     Recorded Time and date

The parties "Agree[d] to Terms of this Supplement as set forth in the Master Agreement." The parties also entered into a similar contract supplement for the years 1966-1981, which is not at issue in this proceeding.

[¶5] After Landata indexed the images, it agreed to provide an on-site database at the Registry (the "PAM" database) to enable York County to review the database before making it available to the public over the internet (the "WAM" database). The databases were estimated to cost $375,000 based on a $1.25-per-document charge.

4

[¶6]   In December 2006, Landata delivered both the PAM and WAM databases to York County, though some data was missing.  York County paid Landata $500,987.50 on December 7, 2006, which included $404,878.75 for services related to the 1940-1965 Supplement.

[¶7]   From December 2006 to February 2007, the parties exchanged emails regarding problems with the database; in particular, the Register of Deeds indicated that "quite a bit of data" was missing from the database.[2]  At a later point, the 1940-1965 indexing data was removed from York County's public webpage.

[¶8]  In 2008, PropertyInfo, by merger, succeeded Landata as the licensor for the LSS and assumed Landata's obligations under the contracts.

[¶9]  In April 2011, PropertyInfo's sales representative referred to the project as "the forever ongoing indexing of 1940-1965" in an email.  And, later that year, PropertyInfo delivered to York County a re-indexed database for 1940-1965 that still contained "null" documents, images without indices, and indices without images.

---

[2]   At York County's request, an announcement to users was placed on each database in March 2007 stating, in relevant part, "On March 9, 2007 it was determined there may have been indexing errors for the year span of January 1, 1940 thru December 31, 1965.  If you based your research on data from those years . . . you are advised to confirm those findings by researching" in the official records at the Registry of Deeds.

[¶10]  In 2015 and 2016, PropertyInfo undertook a quality assurance process to review the 1940-1965 project; the review identified errors concerning mortgages and mortgage releases as well as other types of errors. PropertyInfo delivered a new index in the summer of 2016.  York County raised numerous issues with the 2016 database, which PropertyInfo attempted to remedy, but York County remained dissatisfied with PropertyInfo's performance of the indexing contract.

[¶11]  In December 2016, York County filed a complaint against PropertyInfo[3] alleging breach of contract and unjust enrichment.  The action was commenced ten years after the database was originally delivered to York County and York County had paid PropertyInfo's predecessor-in-interest.

[¶12]  PropertyInfo filed an answer that asserted that the complaint was barred by the statute of limitations.  After an unsuccessful attempt at alternative dispute resolution, PropertyInfo filed a motion for summary judgment with an accompanying statement of material facts.  York County filed an opposing memorandum and an opposing statement of material facts,

---

[3]  The complaint initially also named Kofile Technologies, Inc. as a defendant, but York County voluntarily dismissed Kofile as a defendant, with prejudice, in January 2017.  The government division of PropertyInfo had been sold to Kofile in December 2016—the month when York County filed the lawsuit at issue here—but the York County project remained with PropertyInfo.

6

including additional facts. PropertyInfo filed a reply memorandum and reply statement of material facts.

[¶13] The court entered a summary judgment in favor of PropertyInfo based on its conclusion that the statute of limitations had expired on each of York County's claims.[4] York County timely filed a notice of appeal. *See* 14 M.R.S. § 1851 (2017); M.R. App. P. 2A(a), (b)(1), 2B(c)(1).

## II. LEGAL ANALYSIS

A.    Standard of Review

[¶14] We review de novo, as a question of law, whether the court erred in entering summary judgment because a claim is barred by the applicable limitations period. *Drilling & Blasting Rock Specialists, Inc. v. Rheaume*, 2016 ME 131, ¶¶ 14, 16, 147 A.3d 824. Statutes of limitation are strictly construed. *Estate of Gray*, 2013 ME 29, ¶ 7, 61 A.3d 747.

---

[4] The court further determined that York County had waived any issue of equitable estoppel by failing to oppose PropertyInfo's argument that estoppel did not bar its statute of limitations defense. The court reasoned that, in any event, the elements of estoppel were not satisfied by the summary judgment record.

York County argues on appeal that PropertyInfo should be equitably estopped from asserting the statute of limitations defense—and that reviewing the court's decision on equitable estoppel in this matter will not offend the principle that the trial court should have the opportunity to rule on a question before an appellate court considers it. However, York County waived the equitable estoppel argument by failing to argue it to the Superior Court, and has not challenged the trial court's determination of that waiver on appeal. *Cf. Estate of Frye v. MMG Ins. Co.*, 2018 ME 44, ¶ 17 n.4, 182 A.3d 158) ("The court's reliance on equitable estoppel in this matter was erroneous for several reasons, including that equitable estoppel was not raised by any of the parties in their pleadings, nor argued in their summary judgment memoranda . . . .").

B.      Statute of Limitations

[¶15]  Although York County received the contracted-for database and paid PropertyInfo's predecessor-in-interest for its services in 2006, the County contends that PropertyInfo failed to complete performance of a service contract that has not expired and that the cause of action does not accrue until completion of the contract.  York County argues that, at a minimum, there are disputes of material fact preventing a determination of when the action accrued.

[¶16]  "When a defendant asserts in a motion for summary judgment the affirmative defense of the expiration of a limitations period, the defendant bears the burden of assembling a record of undisputed facts demonstrating that the plaintiff's action is time-barred by the applicable statute of limitations." *Rheaume*, 2016 ME 131, ¶ 15, 147 A.3d 824 (citation omitted).  To withstand such a motion, the plaintiff "bears the burden of demonstrating that the summary judgment record generates a factual dispute about the running of the limitations period." *Id*. (citation omitted).  "[A] genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Id*. ¶ 14 (citation omitted).

[¶17] "Statutes of limitations are designed to provide eventual repose for potential defendants and to avoid the necessity of defending stale claims." *Langevin v. Biddeford*, 481 A.2d 495, 498 (Me. 1984). The statute of limitations in Maine for a contract claim or a claim of unjust enrichment is the general civil statute of limitations: "All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards . . . except as otherwise specially provided." 14 M.R.S. § 752 (2017); *see Tornesello v. Tisdale*, 2008 ME 84, ¶ 10, 948 A.2d 1244; *Me. Mun. Emps. Health Trust v. Maloney*, 2004 ME 51, ¶ 11, 846 A.2d 336.

1. Breach of Contract Claim

[¶18] A breach of contract claim accrues "when the defendant breaches the contract." *Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599. More particularly, the breach of a contract is cognizable when a party to the contract fails to provide the bargained-for benefit. *See, e.g., Kasu Corp. v. Blake, Hall & Sprague, Inc.*, 582 A.2d 978, 980 (Me. 1990) (holding that a breach occurred when an insurance company failed to provide plaintiff with bargained-for coverage, not when the lack of coverage was discovered).

[¶19] When, as here, the contract does not specify the time for performance, "a reasonable time is implied." *Me. Mut. Fire Ins. Co. v. Watson*,

532 A.2d 686, 689 (Me. 1987). If the facts regarding the time of performance are not in dispute, what constitutes a reasonable time is a question of law. *Id.*

[¶20] York County contends that the court erred in concluding that the cause of action accrued in 2006 when PropertyInfo delivered the database and York County tendered payment. Its argument is that, because PropertyInfo continued to make corrections to the database until the filing of suit in 2016, there has been and is a "continuing" breach of contract. We have not considered whether and to what extent a continuing breach of contract will extend the limitation period for an alleged breach of contract,[5] but other courts have addressed this issue.

[¶21] Several jurisdictions recognize the continuing-breach-of-contract theory, but only in limited circumstances. In a widely cited opinion, the United States Court of Appeals for the Fifth Circuit held that, under Texas law, when a breach of contract occurs, subsequent attempts to remedy the defects or provide assurances do not alter the date of the breach for purposes of the statute of limitations. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 363-65

---

[5] The cases cited by York County are not helpful. Discussions about whether a contract predominantly relates to the provision of goods or services for purposes of determining whether the statute of limitations of the Uniform Commercial Code applies, *see Lucien Bourque, Inc. v. Cronkite*, 557 A.2d 193, 195-96 (Me. 1989); *Smith v. Urethane Installations, Inc.*, 492 A.2d 1266, 1268-69 (Me. 1985), or whether a breach is full or partial, *see Down E. Energy Corp. v. RMR, Inc.*, 1997 ME 148, ¶ 10, 697 A.2d 417, provide no guidance here.

10

(5th Cir. 1988).  Similarly, in New York, the Appellate Division held that "[t]he doctrine may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct."  *Henry v. Bank of Am.*, 48 N.Y.S.3d 67, 70 (N.Y. App. Div. 2017).  The doctrine may apply "when the contract imposes a continuing duty on the breaching party" such that there are a series of separate breaches.[6]  *Id*.  For example, if a contract calls for annual deposits into a pension fund, the duty is a continuing one and is breached each year that funds are not deposited.  *Guilbert v. Gardner*, 480 F.3d 140, 150 (2d Cir. 2007) (applying New York law); *see also Orville v. Newski, Inc.*, 547 N.Y.S.2d 913, 914 (N.Y. App. Div. 1989) (holding that a contract requiring minimum annual debt payments was a continuing obligation and a breach of contract occurred each year defendant failed to make the minimum payment). In contrast, when "a plaintiff asserts a single breach—with damages increasing as the breach continued—the continuing wrong theory does not apply."  *Henry*, 48 N.Y.S.3d at 70.

---

[6] *See also Univ. of Pittsburgh v. Townsend*, 542 F.3d 513, 527 (6th Cir. 2008) (stating that "[t]he test of continuity . . . is to be determined by the answer to the question whether the services were performed under one continuous contract, whether express or implied, with no definite time fixed for payment, or were rendered under several separate contracts") (alteration in original) (applying Pennsylvania law).

[¶22] In New Jersey, the theory of a continuing breach of contract "is typically applied in installment contracts, so that a new cause of action arises from the date each payment is missed. But it has also been applied where a party has continuously breached a non-payment performance obligation," as when a municipality failed to collect garbage pursuant to an agreement that required periodic garbage collection. *Nat'l Util. Serv. v. Cambridge-Lee Indus.*, 199 F. App'x 139, 142-43 (3d Cir. 2006) (citation omitted) (applying New Jersey law). Hawaii has taken a similar approach. *See Garner v. State*, 223 P.3d 215, 233 (Haw. Ct. App. 2009) ("[A] new cause of action accrues at each pay period, and a plaintiff may recover the amounts which have become due during the applicable statute of limitations period prior to the filing of the action.").

[¶23] In contrast, some states do not recognize, or have not recognized, the theory of continuing breach of contract in any circumstance. For instance, "[n]o Washington case recognizes a continuing breach as extending the time allowed to bring a suit sounding in contract." *Schreiner Farms, Inc. v. Am. Tower, Inc.*, 293 P.3d 407, 411 (Wash. Ct. App. 2013). In the District of Columbia, "the accrual date begins on the date the contract is breached, not on the date of related incidents," such as subsequent employment actions that follow an initial

work suspension. *Slate v. Pub. Def. Serv.*, 31 F. Supp. 3d 277, 315 (D.D.C. 2014) (citing *Press v. Howard Univ.*, 540 A.2d 733, 734-35 (D.C. 1988)).[7]

[¶24]  Although doctrines allowing the tolling of statutes of limitations have been recognized in medical malpractice cases and cases alleging negligent professional conduct,[8] those tort doctrines arise out of special relationships involving continuing treatment and continuing duties of care.  The arms-length vendor-vendee relationship between the County and PropertyInfo is not analogous and, in any event, the defects here were discovered shortly after the contracted-for product was provided and paid for.

[¶25]  Even if we were to bless the "continuing" breach doctrine, the doctrine would not apply to the claim for breach of contract at issue here, where a material breach of a service contract occurred when the defective database was delivered.  Because this is not a situation in which the "continuing" breach doctrine could apply, the limitations period was not tolled following the 2006 breach, and we affirm the entry of summary judgment on the contract claim.

---

[7]  Here, there is no question that, in December 2016, when Landata initially delivered the database for the years 1940-1965 and received payment, defects in the database were apparent almost immediately thereafter.

[8]  *See Baker v. Farrand*, 2011 ME 91, ¶ 29, 26 A.3d 806; *Myrick v. United States*, No. 1:15-CV-00045-JDL, 2018 U.S. Dist. LEXIS 29183 at *23-24 (D. Me. Feb. 23, 2018); *see also Flannery v. Singer Asset Fin. Co., LLC*, 94 A.3d 553, 569 (Conn. 2014); *see generally* Kyle Graham, Article, *The Continuing Violations Doctrine*, 43 Gonz. L. Rev. 271 (2007).

2.     Unjust Enrichment Claim

[¶26]  York County has also alleged that PropertyInfo is liable based on a theory of unjust enrichment.  Such a claim, however, presupposes the absence of a contractual relationship between the parties.  *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.  Here, there is no dispute that York County and PropertyInfo entered into an express contract, and that relationship precludes the availability of any recovery in equity for unjust enrichment.

[¶27]  Even if York County were entitled to pursue a claim of unjust enrichment, the claim would be barred by the statute of limitations.  An unjust enrichment claim accrues when the alleged unjust enrichment occurs.  *See Maloney*, 2004 ME 51, ¶ 10, 846 A.2d 336 (holding that any unjust enrichment injury occurred when a party first settled a claim or received a substantial portion of the settlement); *United States Bank Nat'l Association v. Adams*, 2014 ME 113, ¶¶ 3, 5, 102 A.3d 774 (holding that an unjust enrichment claim against a borrower's brother accrued when the borrower used some of her mortgage proceeds to pay off a debt owed by her and her brother).

[¶28]  Here, York County paid for delivery of the database in December 2006—ten years before York County filed its complaint in December 2016.  Measured from the 2006 date of the allegedly unjust enrichment, the statute of

limitations expired, and the court properly entered summary judgment. *See* 14 M.R.S. § 752.

The entry is:

Judgment affirmed.

---

Gene R. Libby, Esq., and Keith P. Richard, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant York County and York County Registry of Deeds

Andrew W. Sparks, Esq. (orally), and William J. Kennedy, Esq., Drummond & Drummond, LLP, Portland, for appellee PropertyInfo Corporation, Inc.

York County Superior Court docket number CV-2016-285
FOR CLERK REFERENCE ONLY