STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-2018-273

DEBORAH L. OGLE, Trustee of the )
Deborah Lee Ogle Revocable Trust, )
)
       Plaintiff/Counterclaim )
       Defendant, )
)
   v. )
)
OVERLOOK ROAD AT BRIDGTON )
ASSOCIATION, )
)
       Defendant/Counterclaim )
       Plaintiff. )

**DECISION AND JUDGMENT**

Trial in this matter was held on June 15 and 16, 2023. Trial was limited to Count I of the Complaint, breach of contract. All remaining counts of the Complaint and Counterclaim were resolved before trial. Plaintiff/Counterclaim Defendant Deborah L. Ogle ("Ms. Ogle") introduced her own testimony as well as the testimony of James Curtis and Eileen Barry. Defendant/Counterclaim Plaintiff Overlook Road at Bridgton Association ("the Association") introduced the testimony of Kenneth Ainsley. Based on the evidence admitted at trial, the Court makes the following findings of fact and conclusions of law.

I. **Findings of Fact**

The Association is a homeowners' association in Bridgton, Maine. The Deborah Lee Ogle Revocable Trust is a member of the Association and the record title holder of real property with frontage on Kezar Heights Road in Bridgton. Ms. Ogle resides on the property.

Kezar Heights Road is roughly U-shaped, intersecting at either end with Knights Hill Road. Ms. Ogle's property does not have frontage on Knights Hill Road. There is one

REC'D CUMB CLERKS OFC
AUG 11 '23 PM2:44

lot between Ms. Ogle's property and Knights Hill Road. Ms. Ogle's lot is large enough to be subdivided, but it had not been subdivided at the time of trial.

At meetings in 2000 and 2002, members of the Association discussed a plan to bring electrical service to the entirety of Kezar Heights Road, to be accomplished in phases as lots were developed. (Pl.'s Exs. 1, 3.) The Association's plan to bring power "around" Kezar Heights Road was also discussed at a 2006 meeting for which Ms. Ogle was present. (Pl.'s Ex. 12.)

Ms. Ogle's property was one of the last lots on Kezar Heights Road to be developed. When she was ready to develop her property, electrical service had not yet been brought as far as her property.

Prior to the commencement of this action, the parties engaged in litigation regarding the extension of an electrical line to Ms. Ogle's property. That litigation resolved with the execution of a mutual release in 2010 (the "Mutual Release"). (*See* Pl.'s Ex. 15.)

> The Mutual Release provides, in pertinent part:

> The parties also agree that the Association will pay to have the electrical service completed along the length of Kezar Heights Road and specifically brought in front of Ogle's property when Ogle its successor or assigns receives a building permit for the property at no direct or indirect expense to or as an assessment against Ogle, her heirs or assigns or the Ogle property.

(Pl.'s Ex. 15.) The parties dispute the meaning of this language.

Ms. Ogle testified to her understanding that the Board of Directors of the Association ("the Board") had committed to electrifying the entirety of Kezar Heights Lane prior to execution of the Mutual Release. Ms. Ogle introduced a redlined draft of the Mutual Release, in which Ms. Ogle requested the addition of the "along the length" language. (*See* Pl.'s Ex. 16-4.) The initial draft already included the "brought in front of

Ogle's property" language. (*See* Pl.'s Ex. 16-4.) Ms. Ogle intended the Mutual Release language to reflect her understanding of the Board's plan.

James Curtis, who signed the Mutual Release as Acting President of the Board, testified that he understood the disputed language to obligate the Association to bring power to one point on Ms. Ogle's property, but no farther.

On June 19, 2011, Ms. Ogle emailed members of the Board to inform them that she had secured a building permit and contacted Central Maine Power to bring electrical service to her property. Electrical service was extended only as far as necessary to reach the permitted structure. It was not extended along the entire frontage of Ms. Ogle's property. The Association reimbursed Ms. Ogle for the expense she incurred. (*See* Pl.'s Ex. 21; Def.'s Ex. 64.)

In 2016, Ms. Ogle notified the Association of her intent to build an additional structure on her property. She requested that the Association pay for electrical service to be extended farther along the frontage of her property on Kezar Heights Road to reach the new structure. On November 6, 2016, the Association voted to take no action on Ms. Ogle's request. (Pl.'s Ex. 25.)

## II. Conclusions of Law

Ms. Ogle argues that the Association had an obligation under the Mutual Release to extend electrical service along the entire frontage of Ms. Ogle's property and beyond, to the intersection of Kezar Heights Road and Knights Hill Road. She argues that each time she receives a building permit, the Association is obligated to extend electrical service to that building. When the Association voted to take no action on Ms. Ogle's 2016 request, she argues that the Association breached the Mutual Release.

The Association argues that it was obligated to reimburse Ms. Ogle for extending electrical service only as far as necessary to reach the first structure for which she received

a building permit. The Association argues that it had no continuing obligation triggered by subsequent building permits.

At trial, the Association moved for judgment as a matter of law on the grounds that Ms. Ogle's claim is time-barred and that she failed to introduce evidence of damages in her case-in-chief. The Court took the motion under advisement.

## A. Statute of Limitations

Civil actions must be commenced "within 6 years after the cause of action accrues and not afterwards." 14 M.R.S. § 752 (2023). Whether or not this action is time-barred depends on when the breach of contract claim accrued. "A breach of contract claim accrues 'when the defendant breaches the contract,'" which occurs when one party fails to provide the bargained-for benefit. *York County v. PropertyInfo Corp.*, 2019 ME 12, ¶ 18, 200 A.3d 803 (quoting *Gile v. Albert*, 2008 ME 58, ¶ 8, 943 A.2d 599). If the contract does not specify the time for performance, "a reasonable time is implied." *Me. Mut. Fire Ins. Co. v. Watson*, 532 A.2d 686, 689 (Me. 1987).

To determine whether and when the Association breached the Mutual Release, the Court must interpret the disputed language in the Mutual Release. The Court construes contracts "in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how one clause is explained, modified, limited or controlled by the others." *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989 (quoting *Peerless Ins. Co. v. Brennon*, 564 A.2d 383, 384-85 (Me. 1989)). "Ultimately, we seek to give effect to the plain meaning of the words used in the contract and avoid rendering any part meaningless." *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244. If, however, the language of the contract is ambiguous, "the interpretation of the ambiguous language becomes a question for the fact-finder to resolve by taking extrinsic evidence."

*Id.*

### i.    Required Performance

The language, "the Association will pay to have the electrical service completed along the length of Kezar Heights Road and specifically brought in front of Ogle's property" is ambiguous. The language could be reasonably understood to mean that the Association is obligated to pay to have electrical service installed along the entire length of the Kezar Heights Road, including a pole or poles on Ms. Ogle's property's frontage. Alternatively, the language might mean that the Association must pay for electrical lines to be strung parallel to Kezar Heights Road from the last existing pole to Ms. Ogle's property's frontage on Kezar Heights Road, but not from the property's frontage to any structure to be built on Ms. Ogle's property. Accordingly, it is appropriate for the Court to consider extrinsic evidence of the language's meaning.

From Board meeting minutes, it is apparent that the Association planned for electrical service to eventually run continuously from one end of Kezar Heights Road to the opposite end. Ms. Ogle's testimony made clear that the language she proposed to add to the Mutual Release was meant to obligate the Association to carry out the plan to electrify the entire length of Kezar Heights Road. The choice of the word "complete" rather than "extend" or "bring" also reflects this intention.

Although the Association argues that this interpretation makes surplusage of the phrase "and specifically brought in front of Ogle's property," the Court disagrees. Testimony explained that this language was intended to ensure that the power lines were installed along Ms. Ogle's property's frontage, rather than on the opposite side of Kezar Heights Road.

The Court finds that the Mutual Release obligated the Association to pay for the extension of electrical service from the last pole on Kezar Heights Road to Knights Hill

Road, including the frontage of Ms. Ogle's property, so that the entirety of Kezar Heights Road was electrified.

### ii. Timing of Breach

Having concluded that the Association was obligated to extend power the entire length of Kezar Heights Road, the Court must next determine when this performance was due. Ms. Ogle's interpretation that each building permit she received would trigger a further extension of power is inconsistent with her position (and the Court's interpretation) that the Association was obligated to extend power beyond her property line to the intersection of Knights Hill Road. Under Ms. Ogle's interpretation, the Association would never become obligated to extend power past Ms. Ogle's property line, no matter how many permits she received.

Ms. Ogle argues that the language "Ogle its successor or assigns" suggests that, if Ms. Ogle were to subdivide her property, the Association would become obligated to perform each time the purchaser of a lot received a building permit. In other words, Ms. Ogle claims that the language does not foreclose the possibility of multiple building permits triggering the Association's obligation at different times. Ms. Ogle's lot, however, has not been subdivided.

The Court finds that the Association became obligated to perform in full when Ms. Ogle first notified the Association that she had obtained a building permit. When the Association did not pay for completion of the electrical line to the end of Kezar Heights Road within a reasonable time after Ms. Ogle received her first building permit in 2011, it breached the Mutual Release.

In *York County v. PropertyInfo Corporation, Inc.*, the Law Court discussed the "continuing breach doctrine," which provides that a new cause of action repeatedly or continuously arises when a party's actions or omissions constitute repeated or continuous

breaches of a contract. 2019 ME 12, ¶¶ 20-25, 200 A.3d 803. The Law Court noted that states that recognize the continuing breach theory typically apply it only in the context of installment contracts or contracts that call for periodic non-payment performances. *Id.* ¶ 22. Other states do not recognize the theory under any circumstances. *Id.* ¶ 23.

The Law Court held that, even if it were to recognize the continuing breach theory, it would not apply to the facts of that case, "where a material breach of a service contract occurred when the defective database was delivered." *Id.* ¶ 25.

Having found that the Mutual Release obligated the Association to pay for completion of electrical service along the entire length of Kezar Heights Road and that performance was due within a reasonable time after Ms. Ogle received her first building permit, the Mutual Release is not the kind of contract to which the continuing breach doctrine would apply, even if Maine law recognized the theory. The Association breached the Mutual Release in 2011 or early 2012, at the latest. The decision to take no action on Ms. Ogle's 2016 request was not a new breach giving rise to a new cause of action. Because more than six years passed between the breach and Ms. Ogle's commencement of this action in October 2018, this action is time-barred.

## B.     Breach of Contract Claim

Even if Ms. Ogle's claim was not time-barred, she failed to establish the elements of breach of contract. To establish a valid contract, a party must show consideration and mutual assent to be bound by the material terms of the agreement. *Tobin v. Barter,* 2014 ME 51, ¶ 9, 89 A.3d 1088 (quoting *Sullivan v. Porter,* 2004 ME 134, ¶ 13, 861 A.2d 625). To obtain relief for breach of contract, the plaintiff must demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages. *Id.* ¶ 10.

The parties did not dispute at trial that the Mutual Release was valid and binding.

Ms. Ogle, however, did not present evidence of damages in her case-in-chief. After the Association rested, Ms. Ogle was recalled to testify about the value of her property and how it was affected by the Association's breach. Although the Court allowed Ms. Ogle to be heard, the Court will not consider this testimony because it did not serve to rebut evidence generated by the Association's witnesses. *See* M.R. Evid. 611(a).

And although property owners may generally testify as to their opinion about the value of their property, the Court would accord no weight to Ms. Ogle's opinion about the reduction in value of her property caused by the incomplete electrical service or the cost of completing the installation of electrical service along her property's frontage. *See Hutz v. Alden*, 2011 ME 27, ¶ 15, 12 A.3d 1174.

Moreover, Ms. Ogle has not shown that she is entitled to specific performance. "[A]n equitable remedy such as specific performance will not be granted where there exists an adequate remedy at law." *McIntyre v. Plummer Assocs.*, 375 A.2d 1083, 1084 (Me. 1977). The Mutual Release obligates the Association "to pay to have the electrical service completed." The Association's breach would presumably be adequately remedied by money damages in the amount it would cost for Ms. Ogle to complete electrification of her property.[1] In any event, Ms. Ogle has not shown that she lacks an adequate remedy at law.

Having failed to introduce competent evidence of damages that she would be entitled to recover, Ms. Ogle has not upheld her burden.

### III. Conclusion

For the foregoing reasons, judgment is entered in favor of the Association on Count I of the Complaint.

---

[1] Ms. Ogle's own testimony about a reduction in the value of her property suggests that there exists an adequate remedy at law.

The entry is:

Judgment is entered for Defendant Overlook Road at Bridgton Association on Count I of the Complaint filed by Plaintiff Deborah L. Ogle, as Trustee of the Deborah Lee Ogle Revocable Trust.

The Clerk is directed to incorporate this Decision and Judgment into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: ___8/11/23___

Mary Gay Kennedy, Justice
Maine Superior Court

Entered on the Docket: 8/11/2023